KRUEGER, Respondent, vs. BUEL and others, imp., Appellants.

*April 29—May 31, 1913.*

*Contracts: Exchange of real property: Mental incapacity: Rescission: Waiver of right:* Res judicata: Ex parte *proceeding: Certificate of survivorship: Unauthorized recital: Trial: Time consumed: Length of findings and judgment: Miscarriage of justice in allowing costs: Appeal.*

1. In an action to rescind a contract and set aside conveyances by which plaintiff, an infirm and weak-minded woman, exchanged real property worth $6,000 for an equity in other property not worth to exceed $3,000, findings of the trial court to the effect that plaintiff's mental condition was such that she did not comprehend or appreciate what she was doing and that defendants dealt with her knowing her condition are *held* to be sustained by the evidence.
2. Plaintiff did not, in such case, waive her right to rescind by failing to bring suit until nearly six months after the exchange, it not appearing that her mental condition improved in the meantime or that she ever fully appreciated to what extent she had been wronged.
3. A certificate of survivorship, issued by the county court upon petition of the grantee of land, recited the death of the grantor's husband and that thereupon all his right, title, and interest in the land vested in the grantor, and further recited that said grantor had conveyed the premises to the petitioner and that the petitioner "is now the owner in fee simple" thereof. *Held*, that such last recital is not *res judicata* or conclusive against said grantor, she not being in any sense a party to the

proceeding, although she testified, on the hearing, as to the date of her husband's death.

4. The length of time consumed in the preliminary proceedings and in the trial of this case, and the excessive amplitude of the so-called findings and judgment, are criticised; and under ch. 214, Laws of 1913 (sec. 2405m, Stats.), it is *held* that, although no exceptions were taken to the allowances mentioned, it was a miscarriage of justice to allow costs for more than four days trial work and to allow any costs to be taxed for the findings and judgment.

APPEAL from a judgment of the circuit court for Milwaukee county: J. C. LUDWIG, Circuit Judge. *Affirmed in part; reversed in part.*

In March, 1909, the plaintiff was the owner of a piece of property on Humboldt avenue in the city of Milwaukee on which there was a mortgage of $750. She called on her grocer and advised him that she would like to sell, as she was not getting sufficient income from the property. He in turn called on a real-estate dealer named Leinss in reference to selling the property. Leinss took an option from the plaintiff at $8,500, with an agreement that he was to receive $500 commission on the sale at the price named. Leinss in turn called on *Albert Buel,* a real-estate dealer, in reference to making a disposition of the property, and *Buel* examined it. At this time *Buel* owned two parcels of property consisting of two double-flat buildings, one parcel being located on Thirty-eighth street and one on Center street. The Thirty-eighth street property was incumbered by a mortgage of $3,500, and the Center street property by a mortgage of $3,000. A contract was entered into between the plaintiff and *Buel* whereby the plaintiff agreed to exchange her Humboldt avenue property for the two parcels of property owned by *Buel.* The plaintiff agreed to deed her property free and clear of all incumbrances and to assume and pay the incumbrances, amounting to $6,500, on the two parcels of property which she was

to receive in exchange therefor.   The deeds were delivered
on March 18, 1909, the deed from the plaintiff running to
*Lena Orr,* a sister of the defendant *Buel.*   On the same day
the plaintiff executed two mortgages, one for $500 on the
Thirty-eighth street property which had been conveyed to
her and which represented the cash loan made by the defend-
ant *Annie Buel* to her, and one for $750 on the Center street
property, also given to the defendant *Annie Buel* to offset the
$750 mortgage on the Humboldt avenue property which
plaintiff had conveyed.   Plaintiff remained in possession of
the Humboldt avenue property until April, 1909, at which
time she removed to the Center street property which she had
taken in exchange, and occupied the same until September,
1909.   On April 29, 1909, the plaintiff sold the Center street
property to her son Charles W. Krueger for $5,000, subject
to the mortgages thereon, aggregating $3,750.   On July 11,
1909, the son reconveyed the property to the plaintiff.   From
March 18, 1909, to September, 1909, the defendant *Buel* col-
lected the rents of the Thirty-eighth street property for the
plaintiff and she called at his office monthly to receive the
rents.   *Buel* also collected the rents for the plaintiff on the
Center street property until the same was conveyed to Charles
W. Krueger.   Thereafter he collected the rents up to July 11,
1909, and for some time thereafter plaintiff collected the
rents on the property.   On March 18, 1909, *Lena Orr,* in
whose name the Humboldt avenue property was taken, exe-
cuted a mortgage thereon for the sum of $4,500 to *Annie
Buel,* the wife of *Albert Buel.*   On May 17, 1909, *Annie
Buel* assigned this mortgage to the defendant P. B. Weber.
The court held that Mr. Weber was a *bona fide* purchaser of
the note and mortgage in due course and was entitled to pro-
tection as such.   After the mortgage was executed *Lena Orr*
conveyed the premises to the defendant Arthur Froemming
in consideration of $1,550, subject to the mortgage of $4,500

·thereon, which had been purchased by Weber. The court found that Froemming purchased with notice of the rights of the plaintiff and that he did not participate in any fraud that was practiced upon her.

The plaintiff brought this action to rescind the contract entered into between herself and *Buel* and to cancel and set aside the deed executed by her to *Lena Orr* and all subsequent conveyances and incumbrances placed thereon.

The findings of fact, if they can be designated such, are very voluminous, and a large number of additional facts are found and recited in the judgment. No useful purpose would be served by attempting to give any synopsis of these findings. The court did find that the property which the plaintiff deeded to the defendants was of the value of $6,000 over and above the incumbrances thereon of $750; that the value of the equity in the properties which she received in exchange therefor did not exceed $3,000, and that the plaintiff's mental condition was such that she was not competent to protect herself in a deal of this kind, and that she had been overreached. The court further found that by reason of the mortgage which had been assigned to the defendant P. B. Weber the status of the parties could not be restored, and that Weber was entitled to foreclose his mortgage as against the plaintiff. The property received by the plaintiff from *Buel* was restored to *Buel,* and he and his codefendants, *Annie Buel* and *Lena Orr* and Ernst Leinss, were required by the judgment of the court to pay $6,000, the value of the property over and above incumbrances conveyed to *Lena Orr* by the plaintiff, which judgment was made a lien on the interest of the defendants in and to the Thirty-eighth street and Center street properties, which were restored to them.

A number of questions involving the equities of the defendants as between themselves were litigated on the trial and are ·provided for in the findings and judgment, but they are not

material on this appeal.    The defendants *Albert Buel, Annie Buel,* and *Lena Orr* appeal from the judgment.

*Alfred C. Rudolph* and *Fred Doering,* for the appellants.
*Moritz Wittig,* for the respondent.

BARNES, J.    Numerous errors are assigned, but there is really only one vital question involved in the case.    The circuit court found that the plaintiff, a woman of fifty-five years of age, had the appearance of and acted like a person of about seventy-five years, was infirm and childish, broken in health, weak-minded and easily susceptible to influence, and that she was practically a helpless cripple and a mental wreck, and that such was substantially her condition when she executed the contract and deed and made the trade outlined in the statement of facts; that she made the trade without consulting her friends or relatives, knew nothing of the value of the properties which she was receiving, did not go inside of the flat buildings before consummating the trade and did not know that they were mortgaged, and that she fell into the hands of persons who were able and willing to take advantage of her.

These findings as well as many others are vigorously assailed by the appellants as not having sufficient support in the evidence.    Some of them are highly colored and exaggerated. We have examined the testimony.    There is certainly much in the record which tends to show that plaintiff's mental condition was such that she did not comprehend or appreciate what she was doing when she disposed of $6,000 worth of property for an equity in other property which the court finds on sufficient evidence was not worth to exceed $3,000 and also that defendants dealt with her knowing her condition, and it cannot be said that the real material conclusions reached by the court are against the clear preponderance of the testimony.    It would serve no useful purpose to set forth the evidence supporting the decision of the circuit judge and it is

not the custom of the court to do so. The case is one where the trial court has had the benefit of seeing and hearing the parties to this controversy. It had opportunities that this court cannot have for arriving at a just conclusion. The trial judge was satisfied that an enfeebled old lady of weak mentality had fallen into the hands of the Philistines and had been overreached by designing and unscrupulous persons who mulcted her out of $3,000, or about one half of her property. The evidence to the contrary is not so clear that we can say that the conclusion is not righteous or that it was not justified by the evidence. The case made by the plaintiff was stronger than many others in this court where conveyances have been set aside for like reasons. *Watkins v. Brant,* 46 Wis. 419, 1 N. W. 82; *Konrad v. Zimmermann,* 79 Wis. 306, 48 N. W. 368; *Cole v. Getzinger,* 96 Wis. 559, 71 N. W. 75.

The conclusion reached on the main question in the case disposes of the contention that the plaintiff waived her right to rescind by not bringing her suit until nearly six months after she made the trade. The evidence does not show that the mental condition of the plaintiff improved any in the meantime or that she ever fully appreciated to what extent she had been wronged in the transaction.

The plaintiff and her husband were joint owners of the Humboldt avenue property during his lifetime, under a conveyance which provided that the entire fee should vest in the survivor. After the conveyance was made to *Lena Orr* she presented a petition to the county court praying that a certificate of survivorship be issued to the plaintiff. The latter appeared as a witness on the hearing of the petition and testified to the date of her husband's death. A certificate was issued reciting the fact of the husband's death and that thereupon all the right, title, and interest of the husband in the premises vested in the plaintiff. The certificate further recited that plaintiff had conveyed the premises to *Lena*

*Orr* and that said *Lena Orr* *"is now the owner in fee simple"* of the premises so conveyed. It is urged that this recital in the certificate is *res adjudicata* and precludes the plaintiff from asserting any title to the property which she conveyed to *Lena Orr*.

The proceeding was *ex parte*. The plaintiff was in no sense a party to it. It was not brought to try title or to quiet title. It was brought to supply a missing link in a chain that would show record title in *Mrs. Orr* when the chain was completed. The recital above quoted had no place in the certificate, added nothing to it, and concluded no one. The question is quite similar to that involved in *Nobarak v. Simmons,* 144 Wis. 187, 189, 190, 128 N. W. 971, where the court attempted to dispose of the property of a person not a party to the litigation. In reference to the attempt this court said: "The court was without the slightest semblance of jurisdiction to make the order for confiscation of respondent's money."

This brings us to the consideration of another matter, which we approach with some hesitation, but concerning which we feel obliged to speak. It is seldom that such a record comes to this court as the one before us. The issues were few and simple. The principal question was whether the mental condition of the plaintiff was such that she understood the transaction. Incidentally the values of the properties exchanged and the question of whether Froemming was a purchaser in good faith and whether Weber was a *bona fide* mortgagee were involved. Three or four days should be ample to fully present the case to the court. Instead the trial consumed nearly three weeks. The preliminary proceedings also seem to have taken an unnecessary length of time. There is a denial of justice to the plaintiff in this case to the extent to which she is compelled to pay expenses unnecessarily incurred. Likewise there is an unjustifiable burden of expense cast upon the defendants and upon

the taxpayers who bear the burden of maintaining the courts, which might and should have been largely avoided.    Counsel seem to have convinced the court that another "celebrated case" had arisen and that all direct and collateral inquiries must be pursued to the remotest ends or at least until the capacity of counsel to frame questions had been exhausted. Causes should be tried without unnecessary delay and at a minimum of expense, else litigants are not receiving from the courts the consideration to which they are entitled as a matter of right.    Interminable examinations and cross-examinations on collateral or immaterial matters should not be tolerated and other examinations should be kept within reasonable bounds.    The complete record in this case consists of a judgment roll of 122 pages, the testimony covering 1,330 pages, and 80 exhibits, besides some other papers.    In contemplating this mass of material, we are forcibly reminded of Macaulay's reference to the monumental character of Dr. Nare's biography of Lord Burleigh in the opening paragraphs of the essay in which that work is reviewed.    It is safe to say that the work has not been read since the essay was published.

The findings and judgment are in harmony with the expansive conception which resulted in the upbuilding of other parts of the record.    The court indicated his findings of fact in a written decision which covers but two pages of the printed case.    The findings of fact and conclusions of law as drawn and signed travel more or less gracefully over forty-three pages of the case.    The judgment contains numerous recitals of evidence that was apparently forgotten or overlooked when the findings were drawn, and that document monopolizes twenty-seven pages of the case.    The so-called findings that are labeled findings of fact are not so in fact. They consist largely of recitals of testimony and of declamation and are highly colored and argumentative.    All the necessary findings could easily be embodied in five or six pages.    We can see but one object that might prompt the

industry of counsel, and that was the desire to tax a large bill of costs against the defendants. That industry might better be directed toward condensation and perspicuity, even if it might prove to be less profitable. The costs taxed for findings alone in this case amounted to $134.07, and for the judgment and copies, $28.65. Besides, costs were taxed for attending trial for sixteen days. Whether the so-called findings and judgment were drawn in good or bad faith, it was a clear abuse of the statute governing the matter of costs to make the allowances which were made. No findings were drawn such as the statute contemplates or such as the decisions of this court hold should be made. The same is true of the judgment. The findings should be a succinct statement of the conclusions reached on the material points in issue. For its own protection this court has the right to insist that the law be observed. No exception was taken to the items of costs referred to as allowed by the court on appeal from the clerk's taxation and no error is assigned thereon in this court. Were it not for the passage of ch. 214, Laws of 1913 (sec. 2405m, Stats.), what has been said on this branch of the case would have been omitted, because little good would be likely to result from mere sermonizing. That act reads as follows:

"In any action or proceeding brought to the supreme court by appeal or writ of error, if it shall appear to that court from the record, that the real controversy has not been fully tried, *or that it is probable that justice has for any reason miscarried,* the supreme court may in its discretion reverse the judgment or order appealed from, regardless of the question whether proper motions, objections, or exceptions appear in the record or not, and may also, in case of reversal, direct the entry of the proper judgment or remit the case to the trial court for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with the statutes governing legal procedure, as shall be deemed necessary to accomplish the ends of justice."

We think it was a clear abuse of the statute regulating costs and a complete miscarriage of justice to allow any costs to be taxed for such findings and judgment as were drawn in the present case.   They do not comply with the law and seem to be obviously prepared for the purpose of swelling costs. We think it was also a miscarriage of justice to allow an attorney fee for sixteen days of trial work in a case that should have been tried in three or four days.   Costs will be allowed for but four days trial work and no costs will be allowed for the findings and judgment.

*By the Court.*—The part of the judgment awarding costs is reversed with directions to strike therefrom the sum of $198.72.   The remainder of the judgment is affirmed.   No costs will be allowed in this court, except that the appellants must pay the clerk's fees.