STERLING ENGINEERING & CONSTRUCTION COMPANY, Respondent, vs. BERG and wife, Appellants, and others, Respondents.

*May 7—October 5, 1915.*

*Mechanics' liens: Findings: Evidence: Building contract: Construction: Custom: Material for stairways: "Blind nailing" of interior finish: Compensation of architect for extra work: Consolidation of actions: Bringing in parties inadvertently omitted: Accounting between owner and contractor: Claim for payment of order: Extras: Waiver of conditions in contract: Costs: Taxation: Appeal: When costs limited.*

1. Findings of fact by the trial court in an action to foreclose mechanics' liens are, without discussion, *held* to have such support in the evidence that they cannot be set aside as being contrary to the clear preponderance thereof.

2. Concrete stairs are not so customary and usual in construction work that where some are marked "concrete" on the plan of a building it will be inferred that all are to be of such material— especially where it appears that the owner was undecided whether to construct them of iron or of concrete at the time the contract was let.

3. A finding that, as to the interior finish of a building, driving the nails in with a nail-set and concealing them with putty and paint was in accordance with a contract requiring "all nailing to be blind nailed," is *held* not to be contrary either to the evidence or to the established use of the term "blind nailing" as applied to such work.

4. After an architect had prepared plans and specifications for a three-story building pursuant to a written contract by which, for such work and for superintending the construction, he was to receive one per cent. of the cost of the building, the owner changed his mind and at his request the architect prepared plans and specifications for a fourth story and also superintended the construction of a part thereof. *Held,* that in the absence of any agreement as to compensation for such extra work the architect was entitled to receive the reasonable value thereof.

5. An order consolidating several actions to foreclose mechanics' liens may afterwards, by an order *nunc pro tunc,* be corrected so as to bring in parties to one of the original actions who had been inadvertently omitted in the first order.

6. With the consent of the owner a contractor drew an order upon him in favor of a subcontractor for the amount due to the latter, which was less than the owner owed the contractor. The owner refused to pay the order, but afterwards paid a judgment entered against him thereon with costs. *Held,* that as against the contractor who drew the order the owner was entitled to credit for the original amount thereof only.

7. Although a building contract provides that extras shall be ordered in writing, recovery may be had against the owner for extras put in at his oral request or with his knowledge and consent.

8. Although the architect cannot without express authority waive important conditions in a building contract, the parties themselves may do so.

9. In a consolidated action to foreclose several mechanics' liens the findings of the trial court are not in this case properly subject to the criticism that they are too long and needlessly duplicated.

10. The costs taxed in an action to foreclose mechanics' liens are *held* not so large as to warrant this court in reducing them under the rule of *Krueger v. Buel,* 153 Wis. 583.

11. If dissatisfied with the clerk's taxation of costs, a party should appeal therefrom, and then upon exceptions to the order of the trial court retaxing the costs the supreme court can review it.

12. Sec. 2919, Stats. 1913, limiting costs, does not govern a consolidated action to foreclose mechanics' liens of several contractors upon a building.

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Affirmed.*

Action to foreclose mechanics' liens upon a building owned by *Ludwig Berg* and *Fredericka Berg,* his wife. Six lien claimants, who have proved their claims, were joined in this consolidated action as parties defendant. Three other claimants who were also joined as defendants failed to appear and prove their claims. Findings of fact determining the amount due each claimant were made by the trial court and judgment awarding each a lien for the amount so found was entered. The defendants *Ludwig Berg* and *Fredericka Berg* appealed from the judgment.

For the appellants there was a brief by *Leutermann & Timmermann* and *A. W. Richter,* attorneys, and *Moritz Wiltig,* of counsel, and oral argument by *Mr. Richter, Mr. M. J. Leutermann,* and *Mr. Wiltig.*

*G. J. Davelaar,* for the respondents *Sterling Engineering & Construction Company, B. J. Bruns,* and *Philip* and *P. J. Matt.*

*Max P. Kufalk,* for the respondent *Chrisien.*

*Waldemar C. Wehe,* for the respondents *Neuman & Mueller.*

For the respondent *Nelson* the cause was submitted on the brief of *O. W. Kreutzer.*

The following opinion was filed June 1, 1915:

VINJE, J. This case presents but few questions of law and those of slight importance. Findings of fact made by the trial court and challenged by the appellants aggregate nearly 100. The labor of checking up each finding to see if it is supported by credible evidence has been considerable.

Such labor, however, has been much lightened by the methodical manner in which the briefs of the respective parties were prepared.

In the main the judgment is challenged because the court found a substantial performance of the different contracts; because it found as extras items claimed to be included under the contracts; because it allowed for extras not ordered pursuant to the terms of the contracts; because extras were allowed for at more than their reasonable value; and because it refused to allow damages for alleged failures to perform according to contracts. Appellants also claim that the architect, *Bruns,* who is a lien claimant, acted in collusion with the other claimants and so rendered it difficult for them to prove their defenses and counterclaims. That the case was thoroughly tried by the parties and carefully considered by the trial court is evident from the findings made by it, which for the seven claimants cover nearly fifty printed pages, and also from the fact that it carefully viewed the building after the evidence was taken.

No advantage would accrue to the legal profession from a discussion of claims as to which the findings of fact are affirmed on the ground of sufficient evidence to sustain them and which involve no questions of law. Over ninety per cent. of the case relates to such findings, and as to them the parties will have to rest content with our assurance that all have been carefully examined and have been found to possess such support in the evidence that they cannot be set aside as being contrary to the clear preponderance thereof. They must therefore stand as the facts in the case. *Keilly v. Severson,* 149 Wis. 251, 135 N. W. 875. The practice of not discussing issues resting upon findings of fact that are sustained on appeal has often been followed by the court in the past. See *Hay v. Randles,* 152 Wis. 632, 140 N. W. 333; *First S. & T. Co. v. Milwaukee Co.* 158 Wis. 207, 242, 148 N. W. 22, 1093. That it will be indulged in more frequently in future is evident

from the recent adoption of Rule 64, which provides that "In cases where the order or judgment is affirmed opinions will not hereafter be written unless the questions involved be deemed by this court of such special importance or difficulty as to demand treatment in an opinion." Applying this rule to the present case but few findings of fact need be discussed. Those selected are believed to have some value because they involve a construction of building contracts, or of the terms used therein, or present some legal question.

The *Sterling Engineering Company* contracted to do the concrete work on the building according to plans and specifications submitted to it. Such plans showed no stairway marked "concrete" to the basement nor stairs so marked from the second story either in the rear or center part of the building. There was evidence to the effect that *Berg* was undecided as to what material should be used for such stairways at the time the contract was let and that he afterwards ordered them made of concrete. The contractor was not called upon to furnish more concrete construction under his contract than the plans and specifications could be reasonably construed to call for. Concrete stairs are not so customary and usual that where some are marked "concrete" on a plan it will be inferred that all are to be of such material—especially where, as here, the evidence shows that the owner was undecided whether to construct them of iron or of concrete at the time the contract was let. Of course a situation might well arise where the marking of one or more stairways as concrete might be held to include other unmarked ones. But such is not the case here. The trial court properly allowed for the concrete stairs mentioned as extras.

The carpenter contract provided in one place that "All nailing in interior finish shall be done with finishing nails and as far as possible concealed from sight," and in another place, "All nailing to be blind nailed in the best workmanlike manner." Appellants claim and their evidence shows that

by "blind nailing" is meant raising a chip of the wood, driving the nail under the raised chip and gluing the chip over the nail. The respondents' evidence is to the effect that "blind nailing," in a contract relating to interior finish of a house, means driving the nail in with a nail-set and concealing it with putty and paint; that the nailing described by appellants is used almost exclusively in cabinet work and is known as "chip nailing." The court held with the respondents and found the nailing was according to contract. We cannot say the finding is contrary either to the evidence or the established use of the term "blind nailing" as applied to the interior finish of a house.

The court's finding that the architect acted in good faith throughout is supported by the evidence. It is claimed, however, that even if he did, the court allowed him too much. He entered into a written contract to prepare plans and specifications and superintend the construction of a three-story building for one per cent. of the cost thereof. For this he was allowed $439.16. After he had prepared plans and specifications for a three-story building the owner changed his mind and wanted a four-story building. He requested the architect to prepare plans and specifications for such a building, which he did, and he superintended the construction of a part of the fourth story also—but not all of it. Nothing was said as to his compensation for the work on the fourth story. The appellants claim he should receive but one per cent. for it, namely, the same as the compensation mentioned in the written contract for the three-story building, while the architect claims he is entitled to recover the reasonable value of the extra services shown by the evidence, namely, two per cent. for preparing plans and specifications for the fourth story and three per cent. for superintending the construction thereof, so far as it was completed when he severed his connection with the work. The court allowed him the reasonable value of the extra services, which amounted to

$176.66 and $131.49 respectively. A majority of the court are of the opinion that the contract compensation for the three-story building does not measure the compensation he should receive for the extra labor and that the court properly allowed him the reasonable value thereof as shown by the evidence.

The claim that *Philip Matt* and *P. J. Matt* are not parties to the suit is not supported by the record. They were made parties to the suit of *Nelson* against appellants, but in drawing the order consolidating the different suits they were inadvertently omitted. Afterwards by an order *nunc pro tunc* they were made parties, replied to the counterclaim by a general denial, and evidence as to their claim came in without objection that they were not parties to the suit. The court had power to correct the order of consolidation by an order *nunc pro tunc,* and properly did so.

The *Matts* owed August C. Beck & Son, a subcontractor, the sum of $398.44. With the consent of *Berg* they drew an order upon him for that amount in favor of August C. Beck & Son. *Berg* refused to pay it, and it was put into a judgment amounting with costs to $517.25, which he has since paid. He claims a credit against the *Matts* of the amount of the judgment. They say the credit should be the amount of the order. At the time the order was given the court found that there was due on contract and extras an amount in excess of the order. The evidence sustains such finding. The court properly allowed *Berg* a credit for the amount of the order only.

Many exceptions were taken to findings allowing for extras on the ground that they had not been ordered in writing as the contracts provided. The evidence shows that they had either been ordered orally by *Mr. Berg,* the owner, or they had been put in as extras with his knowledge and consent. In either case the extras were properly allowed. An oral request made by one party to a written building contract and

complied with by the other, if contrary to the contract, modifies it to that extent. So also knowledge of and acquiescence in the fact by the owner that extras are being put in by the contractor imply a promise that the owner will pay their reasonable value. *Wambold v. Gehring,* 109 Wis. 122, 85 N. W. 117. While the architect cannot without express authority waive important conditions in a building contract, the parties themselves may do so. *J. G. Wagner Co. v. Cawker,* 112 Wis. 532, 88 N. W. 599.

The clerk taxed costs in favor of the seven lien claimants to the amount of $501.88, of which $258.88 was in favor of the *Sterling Engineering Company* and $69 of the latter amount was for twenty-three days' attendance upon court during trial. Appellants say the findings are too long and are needlessly duplicated. We think they are not properly subject to such criticism, nor are the costs taxed so large as to warrant this court in reducing them under the rule of *Krueger v. Buel,* 153 Wis. 583, 142 N. W. 264.

The appellants took no appeal from the clerk's taxation of costs. This they should have done if they were dissatisfied with it, and then, upon exceptions to the order of the trial court retaxing costs, this court could review it. *McHugh v. C. & N. W. R. Co.* 41 Wis. 79; *Rollins v. Kahn,* 66 Wis. 658, 29 N. W. 640; *Pormann v. Frede,* 72 Wis. 226, 39 N. W. 385. The case of *Allis v. Meadow Spring D. Co.* 67 Wis. 16, 29 N. W. 543, 30 N. W. 300, cited by appellants, was a retaxation of costs in this court and is not applicable. Neither does sec. 2919, Stats. 1913, govern a case of this kind.

The only bill of costs returned with the record is that of the *Sterling Engineering Company,* and the court, if it could review the taxation of costs, would find itself in the predicament of appellants' counsel where they say in their brief, "If we were in a position to know or learn what costs the court allowed to each of the lien claimants we would be in a position

to have the court pare the bill down to the proper amount." They then considerately add: "How the court will pare it down we must leave to its discretion." For the reasons stated the court declines to exercise its discretion.

As to a great many items the evidence was sharply conflicting and would have supported findings different from those made. But, as before stated, the evidence was carefully considered by the trial court, and in addition to the usual advantages which it has in determining the truth upon conflicting evidence it also viewed the premises after all the evidence was taken. This enabled it more correctly to apply the evidence and determine the probative force of the testimony of the different witnesses. Failing to find a clear preponderance of the evidence against any finding made or any error in applying the law to them, it results that the judgment must be affirmed.

*By the Court.*—Judgment affirmed.

A motion by the appellants for a rehearing was denied, with $25 costs, on October 5, 1915.