GOEBEL, and another, d/b/a Goebel, Balestrieri & Associates, Plaintiffs-Respondents, v. NATIONAL EXCHANGORS, INC., and others, Defendants-Appellants: NUTRICO, INC., and others, Defendants.†

Supreme Court

*No. 76–721. Argued March 27, 1979.—Decided May 1, 1979.*
(Also reported in 277 N.W.2d 755.)

† Motion for reconsideration pending. This motion was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

598

For appellants National Exchangors, Inc., and Ray T. Stemper there was a brief and oral argument by *William C. Yellin* of Milwaukee.

For appellant Alpine Valley Resort, Inc., there were joint briefs by *Richard H. Pfeil* of Elkhorn, and *Richard P. Buellesbach, Michael T. Hart* and *Whyte & Hirschboeck, S.C.,* and oral argument by *Thomas C. Ewing,* all of Milwaukee.

For the respondents there was a brief by *Robert F. Lehman* and *Lehman, Seymour & Kremer* of Elkhorn, and oral argument by *Robert F. Lehman.*

BEILFUSS, C. J.   The claimed construction lien arises from a written contract to provide architectural services

for a residential condominium project which was to be built on a 20.743 acre parcel of land on the north side of Sugar Creek Valley, Town of Lafayette, Walworth county.

The lien claimants, plaintiffs in the trial court and respondents on appeal, are Matthias Goebel and Anthony Balestrieri of Goebel, Balestrieri and Associates, architects and engineers doing business in Elkhorn, Wisconsin. The defendant National Exchangors, Inc., owner of the land in question at the time the lien was filed, is a corporation engaged in the business of land development and licensed to do business in the State of Wisconsin. The defendant Ray Stemper, a director and stockholder of National Exchangors, Inc., was president of the corporation when the events which gave rise to this action took place, and agent for the company in its business dealings with the plaintiffs. The defendant Alpine Valley Resort, Inc., a Wisconsin corporation, is the present owner of the property. It purchased the land in question and other land from National Exchangors, Inc., conveyed by warranty deed recorded on January 31, 1974. All three defendants appeal from the judgment of the trial court foreclosing the lien, fixing the amount due the plaintiffs at $37,719.69 ($31,216.69 plus $6,503 interest) for work done pursuant to the contract, and directing that the property be sold to satisfy the judgment.

Some time prior to February, 1972, defendant Stemper contacted the plaintiffs regarding the development of a condominium complex on premises owned by National Exchangors, Inc., and described above. A written contract in letter form dated February 8, 1972 and signed by Goebel was accepted and approved by Ray Stemper for National Exchangors on February 15, 1972. The principal terms of the agreement read as follows:

"This will confirm our telephone conversation of this date concerning the above project as follows:

"Goebel-Balestrieri & Associates, hereinafter referred to as the Architect, agrees to provide architectural services for this project including conferences with National Exchangors, hereinafter referred to as the Owner, governmental bodies and regulatory agencies; preparation of preliminary drawings, working drawings and specifications; taking of bids and administration of the construction contract.

"The Owner agrees to pay the Architect for the above services, a fee of Five Hundred Dollars ($500.00) per apartment, for each apartment constructed. Payments shall be made periodically as construction progresses.

"The Architect shall not proceed with working drawings and specifications without prior written authorization from the Owner.

"In the Event this project does not proceed into working drawings and specifications, no monies shall be due the Architect."

The initial site plan presented to the town board for rezoning was drawn up by the architects. The property was rezoned to accommodate the planned construction. The architects next prepared preliminary drawings and specifications on the instructions of Stemper and pursuant to their written agreement. The requisite approval of the plans was obtained from the State Industrial Commission. In order to evaluate the economic feasibility of the proposed complex, Stemper submitted the drawings to a general construction contractor, with whom his company had previously done business, for a preliminary cost estimate. The estimate was approximately $17 per square foot. On the basis of these favorable approximate costs. Stemper orally authorized and directed Goebel to proceed with final working drawings and specifications.

The final working plans were let out for bidding to interested parties selected by Stemper. The bids returned were substantially higher ($30–$40 per sq. ft.) than the original projections. The parties then met to revise the

plans. Corrections and alterations were made by the architects in the final working plans and specifications reflecting the changes agreed upon, and the plans were redistributed for rebidding. When the second bids also exceeded the projected budget, the corporation completely abandoned the project. The land, still vacant, was ultimately sold by National Exchangors, Inc., to Alpine Valley Resort, Inc., under a warranty deed recorded on January 31, 1974.

In May, 1973, the architects served an amended notice of intent to file a lien claim dated May 7, 1973, and on May 8, 1973 delivered a copy to National Exchangors, Inc. The amount of the claim was $30,016.68 plus disbursements of $1,200.01 for architectural services over the period commencing March 15, 1972 and terminating December 19, 1972. Pursuant to this notice a lien claim in the amount of $31,216.69 was timely filed and, on June 8, 1973, docketed in the circuit court for Walworth county.

On December 12, 1973, because no payment on the debt had been made, an action for lien foreclosure was commenced against National Exchangors, Inc., Ray Stemper, and three others: Nutrico, Inc., Herbert G. Moat and Ida Mae Moat. The latter three defendants were ultimately found to have no interest in the property and were consequently dismissed from the action and are not involved in this appeal. On April 10, 1974, an amended summons and complaint were filed joining Alpine Valley Resort, Inc., the purchaser of the land, as a party defendant. The defendants National Exchangors and Stemper answer the complaint denying both the existence of the debt and the validity of the lien.

A hearing on the matter was held to the court without a jury. At the opening of the trial the plaintiffs moved the court for leave to amend the complaint to include an alternative claim based on *quantum meruit*. The de-

fendants objected and the motion was denied by the court on the grounds of surprise to the defendants. At the close of the trial, the court, *sua sponte,* vacated the ruling on the motion and reserved its decision pending appeal of the lien foreclosure action to this court.

The trial court's findings of fact and conclusions of law were included in a written decision and order dated February 8, 1977. With reference to the lien claim the court found as follows: That Alpine Valley Resort, Inc., had the advantage of examining the plaintiffs' working plans and specifications for the abandoned building project prior to the sale of the land; that Alpine's purchase of the property in 1974 was made with full knowledge of the existence of the architects' construction lien filed in 1973; that ch. 289, Stats., provides for a lien for furnishing architectural plans and specifications for the improvement of land; and that ch. 289 further provides that such liens may attach prior to the visible commencement of construction. Based on these findings the trial court concluded that the plaintiffs' construction lien claim was valid and enforceable and prior to Alpine's interest in the property.

As to the contractual obligation of defendants National Exchangors and Stemper, the court found the facts substantially as set forth above and, further, that at the time of the abandonment of the project by the defendant corporation the architects had accomplished all the architectural services contemplated by the contract except some supervision of construction which amounted to approximately 10 percent of the total contractual obligation; and that the payment of fees did not depend on the completion of the apartments. Based on these findings the court concluded that under the contract the amount claimed by the plaintiffs for architectural services rendered was due and owing to them even though the contract was admittedly ambiguous as it related to the fees.

On February 23, 1977, judgment was entered fixing and foreclosing the construction lien in the amount of $31,216.69 plus interest of $6,503 and ordering the sale of the property to satisfy the judgment. Pursuant to sec. 840.10, Stats., *lis pendens* had previously been filed by the plaintiffs on August 3, 1976.

All three defendants appeal from the whole of the judgment. Notice of appeal was filed by National Exchangors, Inc., and Stemper on May 12, 1977, and by Alpine Valley on June 3, 1977. The foreclosure sale originally scheduled for May 17, 1977, was adjourned until completion of the appeal upon deposit of an undertaking in the sum of $46,825 pursuant to sec. 289.08, Stats.

The defendant-appellant Alpine Valley Resort, Inc., contends under our statutory construction lien law and the cases decided thereunder that a lien cannot attach unless visible construction on the land has commenced. The additional issue that involves only the plaintiff-respondent-architects and defendant-respondent-owners National Exchangors, Inc., and Ray T. Stemper is whether under the terms of the agreement and the subsequent transactions between the parties the architects are entitled to compensation.

The plaintiffs claim a lien upon the land for architectural services rendered on the strength of the language in sec. 289.01 (3), Stats., which declares:

"(3) EXTENT AND CHARACTER OF LIEN. Every person who performs any work or procures its performance or furnishes any labor or materials or plans or specifications for the improvement of land, and who complies with s. 289.02, shall have a lien therefor on all interests in the land belonging to its owners. The lien extends to all contiguous land of the owner, but if the improvement is located wholly on one or more platted lots belonging to the owner, the lien applies only to the lots on which the improvement is located."

This section must be considered together with the following definitions provided in sec. 289.01, Stats.:

"289.01 **Construction liens.** (1) . . .

"(2) DEFINITIONS. In this subchapter unless the context or subject matter requires otherwise:

"(a) 'Prime contractor' means:

"1. A person, other than a laborer, but including an architect, professional engineer, or surveyor employed by the owner, who enters into a contract with an owner of land who is not himself the prime contractor as defined in subd. 2 to improve the land. . . .

"2. . . .

"(b) 'Lien claimant' means any person who claims a lien under this section pursuant to a contract for improvement of land entered into by an owner of the land.

"(c) 'Improve' or 'improvement' includes any building, structure, erection, fixture, demolition, alteration, excavation, filling, grading, tiling, planting, clearing or landscaping which is built, erected, made or done on or to land for its permanent benefit. This enumeration is intended as an extension rather than a limitation of the normal meaning and scope of 'improve' and 'improvement'."

One further section, sec. 289.01(4), Stats., Priority of Construction Lien, is relevant to the issue in the instant case. It provides in part as follows:

"(4) PRIORITY OF CONSTRUCTION LIEN. The lien provided in sub. (3) shall be prior to any lien which originates subsequent to the visible commencement in place of the work of improvement, except as otherwise provided in ss. 215.21(4) (a) and 706.11(1). When new construction is the principal improvement involved, commencement is deemed to occur no earlier than the beginning of substantial excavation for the foundations, footing or base of the new construction. . . Lien claimants who perform work or procure its performance or furnish any labor or materials or plans or specifications for an improvement prior to the visible commencement of the work of improvement shall have lien rights, but shall have only the priority accorded to other lien claimants."

It has been consistently held by this court that the lien statutes of this state are remedial in character and are to be liberally construed.[1] However it must be acknowledged that "a lien for work and materials on a building, is a privilege derived entirely from statutory provision, and cannot be maintained beyond the extent of the grant of the act by which it is conferred." *Rees v. Ludington,* 13 Wis. 308, 311–12 (*276, *279), (1860). "The lien, being purely a statutory right, it must be pursued as the statute directs, or it fails." *Scott v. Christianson,* 110 Wis. 164, 167, 85 N.W. 658 (1901).

In the present case the trial court found that the architects prepared voluminous plans and specifications done in a professional and workmanlike manner and furnished for the improvement of the land in question. It is undisputed that the work done at the site was minimal. Architect Goebel visited the site to overlook the topography preparatory to drawing a contour map of the site plan. He was also present at the site when borings were made for soil testing. However, the project was abandoned by the corporate property owner for business reasons before the plans could be brought to fruition and prior to the commencement of any construction at all.

A question to be determined on this appeal is whether, under the language of the relevant sections of ch. 289, Stats., cited above, the trial court erred in enforcing the architects' lien claim for the furnishing of plans and specifications when there had been no visible commencement of the work of improvement at the site itself.

This court has previously construed and applied these sections of the construction lien laws, formerly called

---

[1] *Findorff v. Fuller & Johnson Mfg. Co.,* 212 Wis. 365, 248 N.W. 766 (1933); *City Lumber & Supply Co. v. Fisher,* 256 Wis. 402, 41 N.W.2d 285 (1950); *Builder's Lumber Co. v. Stuart,* 6 Wis.2d 356 94 N.W.2d 630 (1959).

mechanics' lien laws, which although periodically revised since their enactment have continued essentially unchanged in their basic provisions. A review of the cases, some of which date from the early days of the statute, compels the conclusion that the trial court erred in holding the plaintiff-architects had perfected a valid lien under the facts of this case.

An early analysis of the lien law is provided in *In re Hoyt*, 3 Biss. 436, Fed. Case No. 6805 (W.D. Wis. 1873). The language of the court, quoted at length, is:

"In Rees v. Ludington, 13 Wis. 276 [308], and Jessup v. Stone, Id. 466 [521], the question was whether a mortgage executed prior to the commencement of the building took precedence of mechanics' liens upon the building as well as the ground upon which it was situated, and the court held that the mechanics' liens were subordinate to the mortgage upon both the building and ground. In preparing the opinion it seems to have been assumed by the court that the liens attached as of the time of the commencement of the building. . . .

"It is apparent to my mind that the legislature designed that the claims of mechanics and others, for work and materials, should have preference to all liens created by the party after the commencement of the building; that such liens should relate back to the commencement of the building without reference to the time when the work was done or material furnished, provided such liens were filed and prosecuted as prescribed by the act. The statute, by declaring that such liens should be before any liens originating subsequent to the commencement of the building, impliedly fixed that time as the date of the lien. The provision will not admit of any other construction. The lien is a creature of the statute and has the force and effect given to it by the law of its creation.

". . .

". . . it follows logically from it that there can be no preference as between [the liens at issue]. I have held that the mechanics' liens by relation date from the commencement of the building, not one but all."

The same conclusion was reached by this court in *Fitzgerald v. Walsh,* 107 Wis. 92, 82 N.W. 717 (1900), a case which, like this one, involved an architects' lien for plans and specifications executed pursuant to a contract for the improvement of land. The court summarized the statutory prerequisites for a valid lien as follows:

"2. The right to a lien under ch. 143, Stats. 1898, for work done in the construction of a building, is not dependent upon whether a building is actually constructed, but upon whether such construction is commenced. If the latter circumstance occur, and lienable work be done in aid thereof, the right of lien thereby becomes perfect and cannot thereafter be defeated by any act of the proprietor. . . .
". . .
"So these two things only are necessary to respondent's right of lien: indebtedness of appellant to him for work done, that appellant knew or ought to have known respondent supposed was on account of a building to be presently, or in the near future, constructed; and the commencement of such construction. If the construction of the building the plans were made for was actually commenced, according to such plans, the lien then attached and could not thereafter be defeated by any act on the part of appellant." *Id.,* at 97–98.

Of significance to the present case, the court went on to clarify the meaning of the phrase commencement of construction, declaring:

"Commenting on statutes similar to ours, and quoting from judicial authority, it is said in Jones, Liens, §1309b: 'The foundation of a house or barn constitutes a building within the meaning of the statute giving a mechanic's lien upon a building and upon the lot of land upon which it stands. It is immaterial that the building was never erected or was never completed, or that the purpose to erect it was abandoned. Laborers and materialmen who are employed to do work or furnish material, with the purpose of the employer, then formed, to continue the work to the completion of a building for which

the foundation is thus being prepared, are entitled to acquire a lien under the statute.' In *Brooks v. Lester,* 36 Md. 65, it was said that the commencement of a building 'is some work or labor on the ground, . . . such as beginning to dig the foundation or work of like description, which every one can readily see and recognize as the commencement of a building.' In *Mutual Benefit L. Ins. Co. v. Rowand,* 26 N. J. Eq. 389, the following language was used: 'The legislature intended to make the actual and visible commencement of the building notice to all who might propose either to purchase or acquire liens upon the property. . . . The excavation for the foundation is such notice.' To the same effect are *Thomas v. Mowers,* 27 Kan. 265; *Pennock v. Hoover,* 5 Rawle, 291; *Scott v. Goldinghorst,* 123 Ind. 268; *McCristal v. Cochran,* 147 Pa. St. 225." *Id.,* at 99.[2]

Finally, the court concluded that since excavation of approximately 1,000 yards for the foundation had commenced, the lienable claim had attached and was enforceable. In *Clark v. Smith,* 234 Wis. 138, 144, 290 N.W. 592 (1940), which also involved an architect's construction lien claim, the court, applying the rule in *Fitzgerald v. Walsh, supra,* 107 Wis. at 97, concluded "[a]s to the lien filed by defendants, no construction of the housing having been begun, no lien could attach."[3]

The architect lien claimants in this case argue that refusal to enforce an otherwise valid lienable claim prior to the visible commencement of construction thwarts the purpose of ch. 289, Stats., which is to "provide protection for persons who improve the property of others by furnishing materials or labor thereon." *City Lumber &*

[2] Taking a cue from the holding in *Fitzgerald v. Walsh, supra,* 107 Wis. 92, the legislature in 1935 revised the statute and inserted the word *visible,* making explicit the requirement of the *visible commencement* of the work of improvement. Ch. 483, Laws of 1935.

[3] *See also Barker & Stewart L. Co. v. Marathon P. M. Co.,* 146 Wis. 12, 16, 130 N.W. 866 (1911).

*Supply Co. v. Fisher, supra,* 256 Wis. at 406. The statutory protection offered by ch. 289 is not absolute. It involves a clear balancing of conflicting interests, including those of subsequent purchasers or encumbrancers. The rights of the mortgagee or subsequent purchaser are also protected. As the court explained in *Chapman v. Wadleigh,* 33 Wis. 267, 273 (1873):

"It may be observed here, that the attaching to the realty of any material used in constructing a new building, or in making repairs, is the *commencement* of such building or repairs within the meaning of the statute. It was held in *Jessup v. Stone,* 13 Wis., 466. This rule is reasonable and just, in that it requires an open, visible act to fix and establish the precise time when the mechanic or material man shall have priority of lien over subsequent incumbrancers. Under this rule a person about to take a mortgage upon real estate may determine with absolute certainty, by an examination of the premises, whether his security is liable to be, or can be, impaired by liens of mechanics or material men under the statute. Any other rule might work great wrong and injustice."

The lien claimants' additionally argued that the 1967 amendment to the statute, ch. 351, Laws of 1967, worked a major revision in the long-established rule. We do not believe it did.[4] Two cases which considered the statute subsequent to the 1967 changes dispose of this argument.

---

[4] The Legislative Council notes point out that the 1967 amendment "elaborates but does not substantially change the present law." 35 Wis. Stats. Anno., 1977–78 pocket part, p. 26. Sec. 900.001(7) provides the following explicit rule for the construction of revised statutes:

"(7) CONSTRUCTION OF REVISED STATUTES. A revised statute is to be understood in the same sense as the original unless the change in language indicates a different meaning so clearly as to preclude judicial construction. If the revision bill contains a note which says that the meaning of the statute to which the note relates is not changed by the revision, the note is indicative of the legislative intent."

In *Mortgage Associates v. Monona Shores*, 47 Wis.2d 171, 186–188, 177 N.W.2d 340 (1970), the court stated:

"It is a rule of long-standing that every construction lien shall have priority as of the time of visible commencement of the improvement work at the site as against an unrecorded mortgage given prior to the commencement of the improvement. . . .

"The placing of grade stakes for a street does not constitute an improvement because such work does not fall within the statutory definition of an improvement in sec. 289.01(1)(b), Stats. . . .

". . .

"This view is taken in a recent amendment by ch. 351, Laws of 1967, to our lien law which became effective February, 1968, after the rights in this case accrued. What was sec. 289.01(2)(b) is now sec. 289.01(4), Stats., and provides 'When new construction is the principal improvement involved, commencement is deemed to occur no earlier than the beginning of substantial excavation for the foundations, footings or base of the new construction. . . .' The legislative note accompanying this revised section states no substantial change was made. The notes of Walter B. Raushenbush, the research reporter and legislative draftsman for the study of the Wisconsin lien laws states in Wisconsin Construction Lien Law (1968), CLEW, pp. 42–45, this new section was a clarification of the meaning of the phrase 'visible commencement in place of the work of improvement,' because 'there was a concern that the placing of surveyor's stakes . . . was, after all, visible commencement of the work.' . . ."

In *Stevens Const. Corp. v. Draper Hall, Inc.*, 73 Wis. 2d 104, 114, 242 N.W.2d 893 (1976), a case which involved the Wisconsin Unit Ownership Act, states:

"A construction lien is capable of bringing about an effect at the time it arises, that is, when 'substantial excavation for the foundations' of the new project begin, as provided in sec. 289.01(4), Stats. The later events of giving notice and filing, as required by sec. 289.06, merely preserve and perfect a lien which is already effective

in the sense of being capable of having an effect upon the liened land."

The architects' final argument is that an exception to the general rule should be made in this case because Alpine Valley Resort, Inc., the subsequent purchaser of the land, had actual notice of the architects' filed lien claim prior to the sale. However, under the specific terms of the statute it is the date of the visible commencement of the work of improvement and not the date on which the lien claim is filed which determines when an otherwise valid lienable claim accrues. The construction lien is a creature of statutory law. This court cannot amend the statute which created the lien by declaring that a clear statutory prerequisite to the attachment of the lien, *i.e.*, the visible commencement of construction, is immaterial to the enforcement of the lien under the circumstances of the present case simply because the purchaser had notice of the claim.[5]

We believe the trial court's conclusion that the architects' lien was enforceable prior to the visible commencement of construction is an erroneous conclusion of law not binding on this court on appeal.[6] Pursuant to ch. 289, Stats., the architects had a lienable claim for plans and specifications prepared for the improvement of land. However, also pursuant to ch. 289, that lien could not attach, accrue or become effective prior to the visible commencement of the work of improvement. Because no such work of improvement was begun before the sale of the land to Alpine Valley Resort, Inc., it was error to

[5] *See Visser v. Koenders*, 6 Wis.2d 535, 537, 95 N.W.2d 363 (1959).

[6] *Pederson v. First Nat. Bank*, 31 Wis.2d 648, 654, 143 N.W.2d 425 (1966); *Vogt, Inc. v. International Brotherhood*, 270 Wis. 315, 321i, 71 N.W.2d 359, 74 N.W.2d 749 (1955–56).

decree to foreclose the lien and order the sale of the property to satisfy the judgment. The judgment, insofar as it affects Alpine Valley Resort, Inc., must be reversed with directions to dismiss the complaint as to that defendant.

The second issue to be considered is whether the architects were entitled to a money judgment under the terms of the written agreement with National Exchangors, Inc. The trial court held they were. This determination was based on the terms of the agreement itself, testimony concerning the oral alteration of certain terms, and testimony and evidence concerning the intent of the parties to the agreement. As to the plaintiff-architects' obligations under the written agreement, the trial court made the following findings: At the time of abandonment of the project by National Exchangors, Inc., the architects had performed all the architectural services contemplated by the written agreement except some supervision of construction as it progressed, which amounted to only 10 percent of their total contractual obligation; their work was prepared in a professional and workmanlike manner; the architects were not parties to a joint venture in the building of the proposed condominium complex. With respect to the disputed terms of the agreement the court's findings were as follows: The provision that the architects were not to proceed with final working plans without prior written authorization from the property owner had been waived by National Exchangors through its agent Stemper; the provision that the architect would receive a fee of $500 per apartment for each apartment constructed merely fixed the rate of payment and was not a condition precedent to the receipt of compensation by the architects; that the parties did not intend the compensation of the architects to depend on the actual completion of the project but rather on the preparation of the final working plans and specifications.

Oral alteration of the terms of written agreements is permissible. This court in *S & M Rotogravure Service, Inc. v. Baer*, 77 Wis.2d 454, 469, 252 N.W.2d 913 (1977), recently made the following statement:

"In a number of cases, this court has recognized that a provision in construction contracts requiring written change orders may be avoided where the parties evidence by their words or conduct an intent to waive or modify such a provision. *Wiggins Construction Co. v. Joint School District*, 35 Wis.2d 632, 638, 151 N.W.2d 642 (1967) ; *Sterling Engineering & Construction Co. v. Berg*, 161 Wis. 280, 286–87, 152 N.W. 851 (1915) ; *McGrath Construction Co. v. Waupaca-Green Bay Railway Co.*, 148 Wis. 372, 378, 134 N.W. 824 (1912) ."

Modification of a contract, however, is a matter which must be pleaded by the party who claims it was made. *Id.* at 471. *See also* 61 Am. Jur.2d, *Pleading*, sec. 90 at 525 (1972) ; *Thomsen v. Olsen*, 219 Wis. 145, 152, 262 N.W. 601 (1935). Since the defendants never objected to the plaintiffs' failure to meet this pleading requirement, the issue is not before the court in this appeal.

The trial court's findings of fact above, made on conflicting testimony, are not against the great weight and clear preponderance of the evidence and must be accepted.[7]

On the basis of the findings of fact the trial court concluded that a valid contract existed between the parties. The trial court further concluded that under this contract the defendant National Exchangors was obligated to pay the architects the sum of $31,216.69, which amount represented the total of the actual disbursements of the architects and the value of the architectural services rendered.

[7] *Kleinstick v. Daleiden*, 71 Wis.2d 432, 442–43, 238 N.W.2d 714 (1976) ; *Tri-State Home Improvement Co. v. Mansavage*, 77 Wis.2d 648, 655, 253 N.W.2d 474 (1977).

These conclusions were unwarranted by the findings of fact and as such erroneous.

In *Petersen v. Pilgrim Village*, 256 Wis. 621, 624–25, 42 N.W.2d 273 (1950), the court cited two classic principles of contract law which determine the contract issue before us:

"As stated in Restatement, 1 Contracts, p. 40, sec. 32,— " 'An offer must be so definite in its terms, or require such definite terms in the acceptance, that the promises and performances to be rendered by each party are reasonably certain.' "

"As stated in 12 Am. Jur., Contracts, p. 561, sec. 70, — " 'The general rule is that price is an essential ingredient of every contract for the transfer of property or rights therein or for the rendering of services. Accordingly, an agreement must be definite as to compensation. In order that an executory agreement may be valid, it is generally necessary that the price must be certain or capable of being ascertained from the agreement itself. By this is not meant that the exact amount in figures must be stated in the agreement; however, where that is not the case, the price must, by the terms of the agreement, be capable of being definitely ascertained.' "

In this case only two contract provisions relate to the payment of compensation. They are first, that the architects shall be paid a fee of $500 per apartment for each apartment constructed and, second, that no monies shall be due the architects in the event the project does not proceed into final working plans. The $500 figure is of no assistance in figuring the compensation due. Testimony of the parties clearly revealed that the number of apartments to be built was totally indefinite, ranging anywhere from 68 to 100 or more units. Further, there was no testimony that the parties intended the architects to be paid on an hourly basis for actual time spent in

preparation of the plans in the event the project was abandoned prior to construction. The agreement relied on by the architects was fatally vague as to a material term. The trial court's award of a money judgment pursuant to the agreement was error.

On the first day of trial the plaintiffs attempted to amend the pleadings to provide for an alternative cause of action based upon *quantum meruit*. The motion was denied on the grounds of surprise to the defendants.[3] At the close of the trial the court reconsidered the denial, vacated its ruling and retained jurisdiction to abide the fate of the foreclosure action on appeal to this court. This court, in a case which involved similar circumstances, considered a refusal to allow an amendment to add a cause of action for *quantum meruit* an abuse of discretion by the trial court. *See Tri-State Home Improvement Co. v. Mansavage*, 77 Wis.2d 648, 658, 253 N.W.2d 474 (1977). From the outset the architects claimed that they rendered services and made disbursements and that the defendant National Exchangors, Inc., failed to make any payment.

The findings of fact by the trial court that the defendant National Exchangors, Inc., through its agent Stemper, orally directed the architects to prepare the final working drawings and specifications is amply supported by the evidence and is sufficient to support the finding of the ultimate fact that National Exchangors waived the provision in the contract providing this work was to be done only on written authorization by National Exchangors. In further support of the finding of waiver, it is apparent National Exchangors accepted and used the plans and specifications in an attempt to obtain bids and that it directed alteration of the plans and specifications and used them in an attempt to obtain lower construction costs and bids, and further that National Exchangors used these documents in the negotiations for the sale of the land.

---

[3] Sec. 802.09, Stats., formerly sec. 269.44.

Under these circumstances we have no hesitancy in concluding the plaintiff-architects should have an opportunity to prove the reasonable value of their services under the theory of implied contract in *quantum meruit.*[9] The case must be remanded to the trial court to allow for amendment of the complaint and trial of the cause of action based on the theory of *quantum meruit.*

*By the Court.*—Judgment reversed with directions to dismiss the amended complaint as to defendant Alpine Valley, Inc.; the case is remanded for further proceedings not inconsistent with the opinion. Costs awarded to Alpine Valley, Inc. No costs to plaintiffs or defendants National Exchangors, Inc., and Ray T. Stemper.

---

[9] *See Barnes v. Lozoff,* 20 Wis.2d 644, 123 N.W.2d 543 (1963); *Wojahn v. National Union Bank,* 144 Wis. 646, 666 et seq., 129 N.W. 1068 (1911); *Tri-State Home Improvement Co. v. Mansavage,* 77 Wis.2d 648, 659, 253 N.W.2d 474 (1977); 12 Williston, *Contracts* (3d ed.), sec. 1480 at 281–82.