[Case No. 83–1657]

WES PODANY CONSTRUCTION CO., INC.,
a Wisconsin corporation, Plaintiff-Appellant,

v.

Walter A. NOWICKI, and Parnell Woods Association,
a condominium association, Defendants,
Thomas BAUMAN and Barbara Bauman, his wife,
Defendants-Respondents.

[Case No. 83–2083]

WES PODANY CONSTRUCTION CO., INC.,
a Wisconsin corporation, Plaintiff-Appellant,

v.

Walter A. NOWICKI, and Parnell Woods Association,
a condominium association, Defendants,
Raymond W. QUANDT and Ruth Quandt, his wife,
Defendants-Respondents.†

Court of Appeals

*Nos. 83–1657, 83–2083. Submitted on briefs June 13, 1984.—
Decided July 24, 1984.*
(Also reported in 354 N.W.2d 755.)

† Petition to review denied.

For the plaintiff-appellant the cause was submitted on the briefs of *Jerome E. Randall* of Milwaukee.

For defendants-respondents Thomas and Barbara Bauman the cause was submitted on the briefs of *Piette, Knoll & Nelson, S.C.,* with *Thomas H. Knoll* of counsel, of Milwaukee.

For defendants-respondents Raymond and Ruth Quandt the cause was submitted on the briefs of *Piette, Knoll & Nelson, S.C.,* with *Thomas H. Knoll* of counsel, of Milwaukee.

Before Decker and Moser, JJ. and Michael T. Sullivan, Reserve Judge.

MOSER, J.   This is an appeal from separate summary judgments dismissing Wes Podany Construction Co., Inc.'s (Podany) lien foreclosure actions against two condominium properties in the Parnell Woods Condominiums, one owned by Thomas and Barbara Bauman (Baumans) and the other by Raymond W. Quandt and Ruth Quandt (Quandts). Podany appeals.

On January 1, 1979, Podany entered into a contract with Walter A. Nowicki (Nowicki) to provide masonry work and materials for the condominium project. During the time Podany supplied his materials and accomplished his masonry work, Nowicki sold Unit 1 in Building 16 to the Baumans. The Baumans' deed was recorded in the register of deeds office on October 15, 1979. Nowicki sold Unit 1 in Bulding 11 to the Quandts and the deed was recorded on December 10, 1979. Podany completed the work on or about December 14, 1979. On February 20, 1980, he gave Nowicki a notice of intent to file a lien claim against the condominium properties in Buildings 11 and 16 as required under sec. 779.06(2), Stats. On May 12, 1980, Podany filed his lien pursuant to sec. 779.06(1) and (3), Stats.,[1] for the separate amounts of

---

[1] Sec. 779.06, Stats., reads as follows:

Filing claim and beginning action; notice required before filing; contents of claim document. (1) No lien under s. 779.01 shall exist and no action to enforce the same shall be maintained unless within 6 months from the date the lien claimant furnished the last labor or materials a claim for such lien is filed in the office of the clerk of circuit court of the county in which the lands affected thereby lie, and unless within 2 years from the date of

$2,151 and $2,577.44 against the Quandts' and the Baumans' units respectively.

On September 26, 1983, and on November 16, 1983, Podany filed his summonses and complaints for foreclosure against the Baumans' and the Quandts' condominium units.[2] The record does not disclose whether the Baumans answered the complaint, but the Quandts did answer. Both the Baumans and the Quandts moved for summary judgment on the basis that they, as owners, received no notice of intent to file a lien claim under sec. 779.06(2), Stats. Both trial courts granted summary judgment.

---

filing a claim for lien an action is brought and summons and complaint filed therein. Such claim for lien may be filed and docketed, and action brought, notwithstanding the death of the owner of the property affected thereby or of the person with whom the original contract was made, with like effect as if he or she were then living.

(2) No lien claim may be filed or action brought thereon unless, at least 30 days before timely filing of the lien claim, the lien claimant serves on the owner, personally or by registered mail with return receipt requested, a written notice of intent to file a lien claim. The notice is required to be given whether or not the claimant has been required to and has given a previous notice pursuant to s. 779.02. Such notice shall briefly describe the nature of the claim, its amount and the land and improvement to which it relates.

(3) Such a claim for lien shall have attached thereto a copy of any notice given in compliance with s. 779.02 and a copy of the notice given in compliance with sub. (2), and shall contain a statement of the contract or demand upon which it is founded, the name of the person against whom the demand is claimed, the name of the claimant and any assignee, the last date of the performance of any labor or the furnishing of any materials, a legal description of the property against which the lien is claimed, a statement of the amount claimed and all other material facts in relation thereto. Such claim document shall be signed by the claimant or attorney, need not be verified, and in case of action brought, may be amended, as pleadings are.

[2] We have consolidated the separate actions on this appeal because the same issues arise in both cases. Sec. 809.10(3), Stats.

There is no question that at the time Podany contracted for and commenced the mason work on Units 11 and 16 Nowicki was the owner of the premises. It is less clear from the record when Podany did the last work on these premises, but there is no question as to whether Podany's last work was completed within five months prior to the notice of intent to file lien sent to Nowicki. It is undisputed that the lien was filed within thirty days after the notice of intent was served upon Nowicki or within six months after the last work was completed on the units as required by law. Likewise, it is undisputed that separate foreclosure complaints against the unit owners were filed within two years after the last work on the subject property.

The sole issue on this appeal is whether the notice of intent to file a lien under sec. 779.06(2), Stats., served on Nowicki was effective to allow a lien foreclosure against the Baumans' and the Quandts' condominium units.

Both trial courts held that because no notice of intent to file a lien was provided to the Baumans and the Quandts as required under sec. 779.06(2), Stats., and because they were the owners on the day the notice of intent to file a lien was served on Nowicki, no lien foreclosure could be brought against the Baumans and Quandts. Therefore, they dismissed the complaints via summary judgment.

Podany argues that the notice of intent to file a lien under sec. 779.06(2), Stats., must be served on the owner of the premises who was owner at the time the prime contractor first furnished work or materials on the premises. This party remains the owner, he argues, regardless of any transfer of ownership between the date of the first furnishing of work or materials and the date of the service of the notice of intent to file a claim for lien, unless the material and labor contractor had actual or constructive notice of any conveyance within that pe-

riod. He cites as authority the supreme court decision in *Duitman v. Liebelt*.[3] The Baumans and Quandts argue that *Duitman* is not authority for the instant case because the statute on which that decision was based is no longer the Wisconsin law.[4]

Construction liens for work and materials are purely statutory and cannot be maintained beyond the extent of the legislative grant conferred.[5] One pursuing rights under the Wisconsin construction lien law must follow the statute or lien rights fail.[6] Nevertheless, our lien laws are remedial in character and are to be liberally construed to give effect to the legislative intent of protecting the claims of tradesmen, laborers and materialmen for work and materials supplied.[7]

The 1957 statutes separated lien rights of contractors and subcontractors.[8] In 1967 the state legislature removed this difference in situations where labor and material suppliers work directly for the owner; the legislature established those suppliers as prime contractors.[9] In 1979 the whole subject of liens was transferred to ch. 779 of the statutes.[10] In the 1967 revision there were some changes, including the creation of the notice of intent to file for lien under sec. 289.06(2), Stats. (1967),

---

[3] 17 Wis. 2d 543, 117 N.W.2d 672 (1962).

[4] Sec. 289.02(1), Stats. (1957); *see Duitman, supra* note 3, at 547, 117 N.W.2d at 673–74.

[5] *Goebel v. National Exchangors, Inc.*, 88 Wis. 2d 596, 606, 277 N.W.2d 755, 760 (1979).

[6] *Id.*

[7] *R. Fredrick Redi-Mix, Inc. v. Thomson*, 96 Wis. 2d 715, 726, 292 N.W.2d 648, 653–54 (1980).

[8] *See* secs. 289.01 and 289.02, Stats. (1957).

[9] Sec. 3, ch. 351, Laws of 1967; *see also* [as to sec. 289.01(2)(a)], Wis. Stats. Ann. sec. 779.01, Legis. Council Note—1967, 8 (West 1981); *see* sec. 57, ch. 32, Laws of 1979.

[10] Secs. 779.01–779.17, Stats., comprise subchapter I concerning construction liens.

which remained the same under sec. 779.06(2), Stats. (1979). The notice required under sec. 289.02(2), Stats. (1965), was merged into sec. 289.06, Stats. (1967), and sec. 779.06, Stats. (1979).[11] Generally stated, after the 1967 changes, a prime contractor for an owner was required to meet the notice of intent to file a lien and lien filing requirements to preserve his lien, provided that he hired no subcontractors to fulfill the work and materials requirements of his contract.[12] To protect his prime contractor's lien after 1968, and to this date, the contractor for an owner is required to follow the mandates of what is presently sec. 779.06, Stats.[13]

The term "prime contractor" was introduced to the lien statutes in sec. 289.01(2), Stats. (1967), partially to avoid the anomalous treatment of construction contractors. The term encompasses only those persons who deal directly with the owner. It further recognizes the distinction between prime contractors who contract to improve the land of someone else and the owner who does the general contracting for improvements of his own land. Both, in fact, are prime contractors. Under prior law, and in a factual situation like that in *Duitman,* a subcontractor might suddenly find himself a contractor if he dealt with an owner who happened to be his general contractor.[14]

---

[11] *See* Wis. Stats. Ann., sec. 779.02, Legis. Council Note—1967, 57 (West 1981).

[12] *See* sec. 289.02(1)(b) and (2), Stats. (1967), and sec. 779.02 (1)(b) and (2), Stats. (1979).

[13] Sec. 289.06(2), Stats. (1967).

[14] The term "prime contractor" did away with the peculiar facts in *Duitman, supra* note 3, in which a plumbing contractor entered into a work and material contract with the owner on one day, but the next day when he commenced work under the contract he found that the contractor-owner had transferred title to other parties on the day of his plumbing contract. The new owner's deed was filed on the day he had commenced work, but before he commenced work. The plumber became a subcontractor under this

It is long-established law in Wisconsin that a contractor does not lose his lien rights if, after he commences work, the owner with whom he contracted conveys the property to another, provided the contractor has no actual or constructive notice of the conveyance, and further provided that he complies with the then extant lien statute notice provisions.[15] The critical date for the contractor to check ownership or title to property on which he is working or supplying materials is the first day the contractor supplies either materials or work, because his lien rights arise on that date.[16] He is not required to search the title for new conveyances of the property each time he furnishes further labor and material under his original contract.[17] In other words, the common law interpretation of sec. 292.02(1), Stats. (1957), under *Duitman* is good law today when applied to sec. 779.06(2), Stats. (1979).

Because sec. 289.02(1) of the 1957 statutes, on which the *Duitman* case was based, was merged into the successor notice statutes, a contractor's lien rights will prevail against a subsequent owner or owners. The contractor will prevail provided he commenced work before the transfer of title, if he met the statutory requirements to perfect his lien and if he acted without actual or constructive notice of the title transfer. That contractor

unique fact situation and because he did not give the notice to the owner required under sec. 289.02(1), Stats. (1957), the supreme court rejected his lien. *See* ATS, Handbook on Construction Lien Law, 1 (rev. ed. 1975).

[15] *Duitman, supra* note 3, at 547–49, 117 N.W.2d at 674–75; *see also Capital City Lumber Co. v. Schroeder,* 208 Wis. 157, 160, 242 N.W. 489, 490 (1932).

[16] *State v. Lunz,* 86 Wis. 2d 695, 703–04, 273 N.W.2d 767, 772 (1979); *Duitman, supra* note 3, at 548–49, 117 N.W.2d at 675.

[17] *Duitman, supra* note 3, at 549, 117 N.W.2d at 675; *see also* W. Raushenbush, Wisconsin Construction Lien Law—1974, 36–39 (1975).

is entitled to foreclose his lien rights if he gave the notice of intent to file his lien and filed his lien within six months of the day the last work was performed under his contract with the original owner. It matters not that the new owners, in this case the Baumans and the Quandts, received no notice of intent to file a claim for lien under sec. 779.06(2), Stats., because Podany, as a prime contractor, gave a proper notice to Nowicki, the owner at the time he commenced his prime contract work. There is nothing in the trial court record that shows Podany had any actual or constructive notice of a change of ownership from Nowicki to the Baumans or the Quandts. Under *Duitman*, Podany was not obligated to check the current owner every time he did some masonry work. Nowicki owned the condominiums at the time Podany was required to check their ownership and it is undisputed that Nowicki entered into the masonry contract. Therefore, under these facts, there could be only one owner, within the statutory meaning, to whom notice was necessary and that was Nowicki.[18] Podany also complied with the timely filing of his lien and foreclosed his lien within the proper statutory period.

Because the lien law is remedial to protect prime contractors like Podany, the trial courts erred in granting summary judgment to the Baumans and the Quandts and the matter is remanded for trial. We note that Podany requests a remand granting judgment in his favor. There was no proof in the trial court on value of materials and labor supplied to these units, therefore, the matter must be remanded for trial to establish the value of the respective liens to obtain the foreclosure judgment pursuant to sec. 779.10, Stats.

*By the Court.*—Judgments reversed and cause remanded for trial.

---

[18] Under sec. 779.01(2)(d), Stats., an owner is defined as: "the owner of any interest in land who, personally or through an agent, enters into a contract, express or implied, for the improvement of the land."