The ESTATE of Robert R. RIESE, Deceased, by its Personal Representative, the Commercial & Savings Bank of Monroe, and R. Richard Riese, Plaintiffs,

v.

Paul M. WEBER, and the State of Wisconsin, Defendants,
Vickie L. WEBER, Defendant-Appellant,

SCHLITTLER CONSTRUCTION COMPANY, INC., Defendant-Respondent.

Court of Appeals

*No. 85–2355. Submitted on briefs April 21, 1986.—Decided May 27, 1986.*

(Also reported in 389 N.W.2d 640.)

For the defendant-appellant the cause was submitted on the briefs of *Jack C. Hoag* of Janesville.

For the defendant-respondent the cause was submitted on the brief of *Ronald W. Braun* of Brodhead.

Before Gartzke, P.J., Dykman, J. and Eich, J.

DYKMAN, J. Vickie Weber appeals from an order directing disbursement of surplus funds from a foreclosure sale to lien claimant Schlittler Construction Company.[1] The issue is whether Schlittler's construction lien has priority over a previously docketed judgment in favor of Vickie Weber by virtue of secs.

---

[1] The initial appeal in this matter, notice of which was filed on December 18, 1985, was dismissed because the order appealed from was neither written nor entered at that time. That order was entered December 30, 1985, and appellant filed a supplemental notice of appeal on February 13, 1986.

779.01(3) and (4), Stats.[2] Because we conclude it does, we affirm.

## FACTS

Paul Weber purchased a vacant lot on land contract from Robert Riese in mid-1982.[3] He began building a home on the lot, doing much of the work himself. On July 12, 1982, he contracted with Schlittler to do soil testing and deliver fill. By that time, excavations for the foundation footings had been dug. Schlittler completed the work and was paid in full by October 2, 1982.

Paul and Vickie Weber were married shortly after construction of the house began but are now divorced.

---

[2] Section 779.01(3), Stats., provides in part:

Every person who performs any work or procures its performance or furnishes any labor or materials or plans or specifications for the improvement of land, and who complies with s. 779.02, shall have a lien therefor on all interests in the land belonging to its owners.

Section 779.01(4), provides in part:

The lien provided in sub. (3) shall be prior to any lien which originates subsequent to the visible commencement in place of the work of improvement, except as otherwise provided by ss. 215.21(4)(a) and 706.11(1). When new construction is the principal improvement involved, commencement is deemed to occur no earlier than the beginning of substantial excavation for the foundations, footings or base of the new construction, except where the new construction is to be added to a substantial existing structure, in which case the commencement is the time of the beginning of substantial excavation or the time of the beginning of substantial preparation of the existing structure to receive the added new construction, whichever is earlier.

[3] Riese died before this action was commenced, and the foreclosure action was brought by his estate.

On April 19, 1984, Vickie docketed a $4,815.00 judgment against Paul.

During June of 1984, Paul again contracted with Schlittler, this time to remove stumps, and to install a septic tank and drain field for the house he was continuing to build. The amount of the contract was $2,064.65. Schlittler filed its construction lien on November 26, 1984.

Paul ultimately defaulted on the land contract. After foreclosure and sale, the Riese estate was paid in full, leaving a surplus of $2,064.60. Both Vickie and Schlittler filed timely claims for the surplus funds. The surplus was held in trust pending a determination of its proper disposition under sec. 846.162, Stats.[4] The trial court concluded that Schlittler's construction lien had priority. This appeal resulted.

---

[4] Section 846.162, Stats., provides:

> If there shall be any surplus paid into court by the sheriff or referee, any party to the action or any person not a party who had a lien on the mortgaged premises at the time of sale, may file with the clerk of court into which the surplus was paid, a notice stating that he is entitled to such surplus money or some part thereof, together with the nature and extent of his claim. The court shall determine the rights of all persons in such surplus fund by reference or by testimony taken in open court, but no such hearing shall be had in court or before a referee except upon 8 days' notice to all persons that have appeared in the action or filed notice of claim to such surplus money. If any such claimant shall not have appeared by attorney, notice of such hearing may be served by mail directed to the claimant at the place of his residence as stated in his notice of claim.

## STANDARD OF REVIEW

The only issue is whether, on these facts, Schlittler has a prior claim to the surplus funds under sec. 779.01(4), Stats. The application of a statute to a particular set of facts presents a question of law. *Midwest Developers v. Goma Corp.,* 121 Wis. 2d 632, 651, 360 N.W.2d 554, 564 (Ct.App. 1984). We decide questions of law independently and without deference to the trial court. *Ball v. District No. 4, Area Board,* 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

Because Wisconsin's lien laws are remedial in nature, we must construe sec. 779.01(4), Stats., liberally "to give effect to the legislative intent of protecting the claims of tradesmen, laborers and materialmen for work and materials supplied." (Footnote omitted.) *Wes Podany Const. Co., Inc. v. Nowicki,* 120 Wis. 2d 319, 324, 354 N.W.2d 755, 758 (Ct.App. 1984).

## CONSTRUCTION LIEN PRIORITY

Section 779.01(4), Stats., provides in pertinent part that a construction lien "shall be prior to any lien which originates subsequent to the visible commencement in place of the work of improvement. . . ." Vickie contends, however, that Schlittler retains this priority only if its competing lien was filed while it was involved in ongoing work on the property, citing *Duitman v. Liebelt,* 17 Wis. 2d 543, 117 N.W.2d 672 (1962). She concludes that the priority of Schlittler's lien for the June, 1984 work cannot relate back to the date of

different work it did in July, 1982 under a separate contract. She misreads *Duitman.*

That case considered whether Duitman was a prime contractor or a subcontractor on the second of two contracts where, unknown to him, ownership of the property was transfered in the interval between his work on each contract. The construction lien statutes at that time distinguished between contractors' liens and subcontractors' liens as to filing requirements. Section 289.02(1), Stats. (1957), required subcontractors to give owners of record notice within 60 days after furnishing the first labor and materials under any contract in order to perfect their liens. The court concluded Duitman was a subcontractor, and held his failure to give the new owners such notice on the second contract was fatal to his lien. The court held Duitman to constructive notice of the change in ownership because he failed to check the records prior to the first date on which he furnished labor or materials on the second contract; the date on which "the right to a lien . . . arises. . . ." *Id.* at 549, 117 N.W.2d at 675. The court noted, however, that Duitman would not have been held to that notice if the labor and materials in question had been furnished "pursuant to his original contract or as part of a relatively uninterrupted course of dealing. . . ." *Id.*

*Duitman* does *not* deal with competing lien claimants. The court noted that

> with respect to the issue of priority of mechanics' liens in relation to other incumbrances that the determining date is the first date on which visible work is done on the premises in connection with the improvement and not the first date on which the lien claimant supplies labor and materials.

*Duitman,* at 549 n. 2, 117 N.W.2d at 675.

■

Wisconsin's current statutes governing construction lien priorities no longer distinguish between contractors' liens and subcontractors' liens. Both attach and have priority as of "the visible commencement in place of the work of improvement." Section 779.01(4), Stats. This language has long been construed to extend preference to construction liens over all competing liens arising after visible construction work begins. Further, such construction liens are held to " 'relate back to the commencement of the building *without reference to the time when the work was done or material furnished,* provided such liens [are] filed and prosecuted as prescribed by the act.' " (Emphasis added.) *Goebel v. National Exchangors, Inc.,* 88 Wis. 2d 596, 607, 277 N.W.2d 755, 761 (1979), quoting *In re Hoyt,* 3 Bliss. 436, Fed. Case No. 6805 (W.D. Wis. 1873).

■

Here there is no dispute that construction of the Weber house visibly began in mid-1982. There is also no dispute that Schlittler perfected its lien for the June, 1984 labor and materials by recording within six months, pursuant to sec. 779.06(1), Stats. We conclude that the lien relates back to mid-1982 and, under the terms of sec. 779.01(4) is prior to Vickie's judgment docketed April 19, 1984. The trial court properly ordered disbursement of the surplus proceeds to Schlittler.

*By the Court.*—Order affirmed.