WATERTOWN REGIONAL MEDICAL CENTER, INC.,
Plaintiff-Respondent,

v.

GENERAL CASUALTY INSURANCE COMPANY,
Defendant-Respondent,

HUPY AND ABRAHAM, S.C., Defendant-Appellant.
[Case No. 2013AP2324]

WATERTOWN REGIONAL MEDICAL CENTER, INC.,
Plaintiff-Respondent,

v.

GENERAL CASUALTY INSURANCE COMPANY,
Defendant-Appellant,

HUPY AND ABRAHAM, S.C., Defendant.
[Case No. 2013AP2511]

Court of Appeals

*Submitted on briefs April 3, 2014.—Decided April 17, 2014.*

2014 WI App 62

(Also reported in 848 N.W.2d 890.)

195

On behalf of the defendant-appellant Hupy and Abraham, S.C., the cause was submitted on the briefs of *Brandon D. Derry* and *Amanda Pirt Meyer* of *Hupy and Abraham, S.C.*, Madison.

On behalf of the defendant-appellant and defendant-respondent General Casualty Insurance Company, the cause was submitted on the briefs of *David J. Pliner* of *Corneille Law Group, LLC*, Madison.

On behalf of the plaintiff-respondent Watertown Regional Medical Center, Inc., the cause was submitted on the briefs of *Peter B. King* of *Peter B. King Attorney at Law, SC*, Fontana.

Before Blanchard, P.J., Lundsten and Kloppenburg, JJ.

¶ 1. LUNDSTEN, J.[1] These consolidated appeals present a dispute regarding who is responsible for Watertown Regional Medical Center's statutory "hospital lien" for medical services rendered to a personal injury claimant, Nathaniel McGuire.[2] The parties to the appeals are the Medical Center; the law firm that represented McGuire in his personal injury action, Hupy and Abraham, S.C.; and the tortfeasor's insurer, General Casualty Insurance Company. The injured party, McGuire, may or may not owe the Medical Center for medical treatment. McGuire is not a party to this action, and the parties before us do not discuss his liability. Thus, we do not address whether McGuire has liability.

¶ 2. The primary question here is one of statutory interpretation involving whether, under the hospital lien statute, WIS. STAT. § 779.80,[3] an attorney or law firm who receives and then distributes a settlement

---

[1] These appeals were converted from one-judge appeals to three-judge appeals pursuant to WIS. STAT. RULE 809.41(3) (2011–12). All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

[2] The claimant, Nathaniel McGuire, changed his name during the relevant time period. His former name was Nathaniel Dickman. In this opinion, we use his current name, including inserting his current name when we quote from documents.

[3] The lien statute at issue has not been amended since 1995.

payment on a personal injury claim is, under the lien statute's language, a "person making any payment to [the] injured person . . . as compensation for the injuries sustained." *See* § 779.80(4). We conclude that an attorney or law firm that merely receives and distributes a settlement payment is not such a "person." General Casualty, however, is such a "person" because General Casualty "ma[de] . . . payment to [McGuire] . . . as compensation for the injuries sustained." Therefore, so far as the hospital lien statute is concerned, General Casualty, not Hupy, is liable to the Medical Center under the statute.

¶ 3. A second question is whether, apart from the hospital lien statute, Hupy must indemnify General Casualty for the lien amount. General Casualty alleges that Hupy is liable under three theories that support three separate claims against Hupy: breach of contract, negligence/assumed duty, and equitable estoppel. We disagree that Hupy is liable under any of these theories. We conclude that General Casualty's contract claim fails because nothing in the settlement documents shows that Hupy agreed to be responsible for paying the lien amount. We also conclude, under the undisputed facts here, that General Casualty's other two claims against Hupy are not viable.

¶ 4. The circuit court concluded that both Hupy and General Casualty were liable for the Medical Center lien. The court also concluded that Hupy must indemnify General Casualty for the lien amount. We leave in place the circuit court's decision in appeal No. 2013AP2511 holding General Casualty liable, but reverse the court's decisions in appeal No. 2013AP2324 holding Hupy liable to the Medical Center and to General Casualty.

## *Background*

¶ 5. The material facts are not in dispute. McGuire was injured in an accident allegedly caused by General Casualty's insured. McGuire received medical treatment from the Medical Center, and filed a personal injury action against General Casualty and its insured. The Medical Center filed a lien under the hospital lien statute and served notices with respect to both General Casualty and McGuire.

¶ 6. McGuire, who was represented by Hupy, and General Casualty settled McGuire's personal injury action for $30,000. General Casualty made the settlement check payable to Hupy's trust account. Hupy then distributed the funds to McGuire and others with an interest in the proceeds. At the time of the settlement, Hupy was aware that McGuire owed the Medical Center money for medical expenses related to McGuire's personal injury, but Hupy did not distribute funds to the Medical Center.[4]

¶ 7. The Medical Center brought a small claims action against both Hupy and General Casualty, seeking recovery from each of them. The Medical Center initially named McGuire as a defendant, but the record

---

[4] The submissions suggest that it is undisputed that Hupy was aware that McGuire owed the Medical Center money for medical expenses related to McGuire's personal injury, but unaware of the Medical Center's lien against McGuire. Our analysis below suggests that Hupy's knowledge is not relevant. However, we do not address the issue because neither the Medical Center nor General Casualty makes arguments persuading us that Hupy's knowledge matters given the other undisputed facts. We do not hold that an attorney's knowledge of a client's obligation or statutory lien would never be relevant to whether that attorney is liable for the underlying amount.

shows that McGuire was dismissed from the action. General Casualty cross-claimed against Hupy, seeking indemnification.

¶ 8. On motions to dismiss and for summary judgment, the circuit court concluded that the terms of WIS. STAT. § 779.80 make both Hupy and General Casualty liable for the Medical Center lien. The court also concluded that Hupy must indemnify General Casualty for the lien amount because Hupy contractually agreed to be responsible for the lien as part of the settlement. Hupy and General Casualty both appeal.

### *Discussion*

*A. Statutory Liability Under WIS. STAT. § 779.80*

¶ 9. The parties dispute as a matter of statutory interpretation whether Hupy or General Casualty or both are liable for the Medical Center's lien under the terms of WIS. STAT. § 779.80. To resolve this dispute, we must interpret the statute and apply it to the undisputed facts, which is a question of law for de novo review. *See Tammy W-G. v. Jacob T.*, 2011 WI 30, ¶ 16, 333 Wis. 2d 273, 797 N.W.2d 854.

¶ 10. "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoted source omitted). Statutory language is "interpreted in the context in which it is used; not in isolation but as part of a whole; . . . and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶ 46.

¶ 11. Here, the focus is on WIS. STAT. § 779.80(4), but, as we shall see, other subsections of that statute provide pertinent context. Subsection (4) provides that "the person making any payment to [the] injured person . . . as compensation for the injuries sustained shall, for a period of one year from the date of such payment, remain liable to the hospital for the amount of [the] lien."[5]

---

[5] WISCONSIN STAT. § 779.80 provides, more fully:

(1) Every corporation, association or other organization operating as a charitable institution and maintaining a hospital in this state shall have a lien for services rendered, by way of treatment, care or maintenance, to any person who has sustained personal injuries as a result of the negligence, wrongful act or any tort of any other person.

(2) Such lien shall attach to any and all rights of action, suits, claims, demands and upon any judgment, award or determination, and upon the proceeds of any settlement which such injured person, or legal representatives might have against any such other person for damages on account of such injuries, for the amount of the reasonable and necessary charges of such hospital.

(3) No such lien shall be effective unless a written notice . . . shall be filed in the office of the clerk of circuit court in the county in which such injuries have occurred, or in the county in which such hospital is located, or in the county in which suit for recovery of such damages is pending, prior to the payment of any moneys to such injured person or legal representatives, but in no event later than 60 days after discharge of such injured person from the hospital.

(a) The clerk of circuit court shall enter all hospital liens in the judgment and lien docket, including the name of the injured person, the date of the event causing the injury and the name of the hospital or other institution making the claim . . . .

(b) Within 10 days after filing of the notice of lien, the hospital shall send by certified mail or registered mail or serve personally a copy of such notice with the date of filing thereof to or upon the injured person and the person alleged to be liable for damages sustained by such injured person, if ascertained by reasonable diligence. If such hospital fails to give notice if the

¶ 12. The question is whether Hupy, General Casualty, or both are a "person making any payment to [McGuire] . . . as compensation for the injuries [McGuire] sustained." *See id.* We agree with the circuit court that General Casualty is a "person making any payment" under the hospital lien statute. However, an intermediary that passes along a payment, like Hupy did here, is not such a "person."

¶ 13. There appears to be little case law interpreting Wis. Stat. § 779.80. The parties supply no such case law, and we have located none that is helpful. We disagree with Hupy that *Yorgan v. Durkin*, 2006 WI 60, 290 Wis. 2d 671, 715 N.W.2d 160, provides meaningful guidance on the question of statutory interpretation presented here. *Yorgan* did not involve a statutory lien under § 779.80. As we shall see, however, *Yorgan* pro-

name and address of the person injured or the person allegedly liable for the injury are known or should be known, the lien shall be void.

(c) The hospital shall also serve a copy of such notice, as provided in par. (b), to any insurer which has insured such person alleged to be liable for the injury against such liability, if the name and address may be ascertained by reasonable diligence.

(4) After filing and service of the notice of lien, no release of any judgment, claim or demand by the injured person shall be valid as against such lien, and the person making any payment to such injured person or legal representatives as compensation for the injuries sustained shall, for a period of one year from the date of such payment, remain liable to the hospital for the amount of such lien.

(5) Such lien shall not in any way prejudice or interfere with any lien or contract which may be made by such injured person or legal representatives with any attorney or attorneys for legal services rendered with respect to the claim of the injured person or legal representatives against the person alleged to be liable for such injury. Said lien shall also be subservient to actual taxable court costs, and actual disbursements made by the attorney in prosecuting the court action.

vides some support for our conclusion on the second issue below regarding Hupy's non-statutory liability to indemnify General Casualty.

¶ 14. In the absence of case law guidance, we conclude that the statutory language is plain as applied to both General Casualty and Hupy. We first provide our plain language interpretation of the hospital lien statute as applied to each of General Casualty and Hupy. We then address the Medical Center's and General Casualty's contrary arguments.

### 1. Statutory Language As Applied To Each Of General Casualty And Hupy

¶ 15. The statute imposes liability for a hospital lien only on a person "making any payment to [the] injured person . . . as compensation for the injuries sustained." *See* Wis. Stat. § 779.80(4). General Casualty plainly is such a person. General Casualty is the source of the payment and made the payment because of its insured's obligation (or potential obligation) to provide compensation for McGuire's injuries. We acknowledge that Hupy served as the intermediary for General Casualty's payment, but fail to see how this interim step means that General Casualty did not make payment as compensation for McGuire's injuries.

¶ 16. Hupy, in contrast, passed along funds from General Casualty, but cannot reasonably be seen as having made a "payment." We do not hold that under all other statutory schemes a funding intermediary never makes "payment," but the plain language here requires payment "as compensation" and Hupy did not make payment "as compensation" for McGuire's injuries. Hupy passed along another's payment that was compensation for McGuire's injuries.

¶ 17. Stated another way, to hold Hupy liable under WIS. STAT. § 779.80(4) would be to read the statute as if liability attached to any person "making *or transferring* any payment" that "*is* compensation for the injuries." But the statute refers only to a "person *making* any payment . . . as compensation for . . . injuries." *Id.* (emphasis added).

¶ 18. Notice provisions in the statute support our interpretation of the statute as applied to both General Casualty and Hupy. Specifically, the statute requires that "the hospital" provide notice of the lien to the "injured person," and to "the person alleged to be liable" and that person's "insurer" if their names and addresses may be ascertainable by reasonable diligence. WIS. STAT. § 779.80(3)(b) and (c). In contrast, there is no notice requirement for an injured person's attorney. Here, it appears undisputed that the Medical Center was required to, and did, provide notice of the lien by mail to McGuire and to General Casualty, but not to Hupy.

¶ 19. To sum up so far, under the plain language of WIS. STAT. § 779.80(4), General Casualty but not Hupy is a "person making any payment to [McGuire] . . . as compensation for the injuries [McGuire] sustained." Therefore, General Casualty, but not Hupy, is statutorily liable to the Medical Center for the lien.[6]

### 2. Medical Center's And General Casualty's Arguments

¶ 20. The Medical Center's and General Casualty's arguments to the contrary are not persua-

---

[6] Although we conclude that Hupy is not statutorily liable for the lien, we do not rely on Hupy's argument that Hupy is a "legal representative" as that term is used in WIS. STAT. § 779.80(4) and, therefore, is not a person making payment under § 779.80.

sive. We start with the Medical Center's arguments, then turn to General Casualty's arguments.

¶ 21. The Medical Center argues that Hupy, as well as General Casualty, is statutorily liable because Hupy, like General Casualty, made a "payment to" McGuire. The Medical Center is referring to the undisputed fact that General Casualty made the $30,000 in settlement funds payable to Hupy's trust account and the additional undisputed fact that Hupy then transferred the funds from its trust account to McGuire and others claiming an interest. As we understand it, the Medical Center argues, in effect, that "payment" under the statute includes a subsequent transfer of a "payment," so that there are in effect two "payments": (1) the transfer of funds from General Casualty to Hupy's trust account, and (2) the transfer of those same funds from Hupy's trust account to McGuire.

¶ 22. In our view, this interpretation is unreasonable for the reasons already explained. Hupy did not make a "payment" to McGuire. Rather, Hupy served as an intermediary for General Casualty's payment to McGuire.

¶ 23. The Medical Center also argues that the hospital lien statute is plainly intended to protect the hospital, not the injured party's attorney, and that the statute must be liberally construed to protect hospitals. *See Wes Podany Constr. Co v. Nowicki*, 120 Wis. 2d 319, 324, 354 N.W.2d 755 (Ct. App. 1984) (concluding, at least for purposes of the construction lien statutes, that "our lien laws are remedial in character and are to be liberally construed"). We agree with the Medical Center that the hospital lien statute plainly protects hospitals and that we must liberally construe the statute to protect hospitals. But we fail to see how either of these propositions supports the view that a law firm like

207

Hupy is liable under the statute. No matter how liberally in favor of the Medical Center we read the statute, it remains true that, under the statute's plain language, Hupy is not a "person making . . . payment . . . as compensation for . . . injuries."

¶ 24. We observe that a separate subsection of the statute expressly addresses the injured person's attorney. Specifically, WIS. STAT. § 779.80(5) expressly refers to the injured person's "attorney" and provides that a hospital lien "shall not in any way prejudice or interfere with" an attorney's lien or contract for legal services.

¶ 25. We turn to General Casualty's arguments. General Casualty argues that Hupy *is* liable under the statute and also that General Casualty is *not* liable under the statute.

¶ 26. Given our discussion above, there is little left of General Casualty's more specific arguments. General Casualty seems to assume that *someone* must have made payment to McGuire and therefore be liable under the statute and, according to General Casualty, that someone must be Hupy because only Hupy conveyed money to McGuire. However, we have already rejected the notion that passing along a payment is the same as making a payment under WIS. STAT. § 779.80(4).

¶ 27. General Casualty's primary remaining argument is based on a comparison of the language in subsections (1) through (3) of the hospital lien statute to the language in subsection (4) of the statute. General Casualty points out that each of subsections (1) through (3) makes a clear, express reference to the tortfeasor or tortfeasor's insurer. For example, subsection (3) refers to "the persons alleged to be liable for damages sustained by such injured person" and to "any insurer which has insured such person alleged to be liable for

208

the injury." *See* Wis. Stat. § 779.80(3) and (3)(c). General Casualty points out that subsection (4), in contrast, uses different language, namely, the language we have been focusing on: "the person making any payment to such injured person . . . as compensation for the injuries sustained." General Casualty argues:

> There is only one reasonable interpretation of this change in language between the subsections. The legislature necessarily contemplated that the "person making any payment to such injured person" not be limited to the "person alleged to be liable," or to that person's liability insurer. If this was *not* the legislative intent, then the legislature would have simply repeated the phrase, "person alleged to be liable" in sub. (4).
>
> In short, the "person" who remains liable to the hospital under sub. (4) includes *any* person who "mak[es] payment to [McGuire],['] not just to the alleged tortfeasor and/or to the tortfeasor's insurer.

We are not persuaded by General Casualty's argument for two related reasons.

¶ 28. First, General Casualty's argument, even if valid, does not lead to the conclusion that General Casualty is not liable under the statute. At most, it leads to the conclusion that some unknown others in addition to tortfeasors and their insurers could be liable under the statute. Assuming without deciding that the language in Wis. Stat. § 779.80(4) could be read to include persons other than tortfeasors and tortfeasor insurers, we have already provided reasons sufficient to explain why that language is *not* reasonably read to include a person that simply passes along a payment, as Hupy did here. As we have explained, the payment must be made by a person making the payment "as compensation for . . . injuries sustained," and Hupy is not such a person.

209

¶ 29. Second, General Casualty's comparison-of-language argument is a mismatch. There is no place in the statute in which the legislature uses language other than "person making any payment" language to refer *collectively* to tortfeasors and tortfeasor insurers. Therefore, General Casualty's comparison-of-language argument does not show that the legislature must have intended to include additional persons in Wis. Stat. § 779.80(4). We need not and do not decide whether a "person making any payment" never includes persons in addition to tortfeasors and tortfeasor insurers. Rather, we conclude that General Casualty's comparison-of-language argument does not show that "person making any payment" must include additional persons, or that a "person making any payment" includes a law firm such as Hupy that serves as an intermediary for payment.

¶ 30. General Casualty argues that excluding Hupy from Wis. Stat. § 779.80(4) leads to absurd and unreasonable results. However, each of General Casualty's supporting assertions pertains to a separate issue of whether, under the facts here, Hupy should be required to indemnify General Casualty. That is the issue we turn to next.

### B. Whether Hupy Must Indemnify General Casualty For The Lien Amount

¶ 31. The question remains whether, apart from the hospital lien statute, Hupy must indemnify General Casualty for the lien amount. To begin, we reiterate that the question before us pertains to Hupy's potential liability. We acknowledge that our decision with respect to Hupy's liability may implicate McGuire's liability, but the question of McGuire's liability, if any, is not before us.

¶ 32. Hupy and General Casualty dispute whether Hupy must indemnify General Casualty based on claims of breach of contract, negligence/assumed duty, and equitable estoppel. The circuit court determined that Hupy is liable, and the court appeared to rely primarily on General Casualty's theory that Hupy had a contractual obligation. We agree with Hupy that Hupy is not liable in contract because Hupy did not contractually agree to be responsible for the lien amount. We also agree with Hupy that General Casualty's other claims against Hupy are not viable based on the undisputed facts before the circuit court at the time the court rendered its decision.

### 1. Contract

¶ 33. We interpret contract language de novo. *Kaitlin Woods Condo. Ass' n v. North Shore Bank, FSB*, 2013 WI App 146, ¶ 10, 352 Wis. 2d 1, 841 N.W.2d 562. "If the contract is unambiguous, our inquiry is limited to the four corners of the contract and we do not consider other evidence as to what the parties intended." *Id.* Here, we conclude that, under the pertinent documents, it is clear that Hupy did not contractually agree to be responsible for indemnifying General Casualty for the lien amount, nor did Hupy agree to facilitate payment to the Medical Center or any other entity.

¶ 34. The key document is a release of claims form that McGuire and a Hupy attorney signed. In that release, the "undersigned . . . agree[d] to indemnify and hold harmless [General Casualty and other released parties] against any and all claims by or on behalf of persons or entities rendering medical care or treatment

211

to [McGuire] for the injuries sustained" in an identified accident. The disputed contract interpretation question is whether Hupy is an "undersigned" within the meaning of the release.

¶ 35. General Casualty's assertion that Hupy is an "undersigned" is based on the fact that both McGuire and a Hupy attorney signed the release. We disagree that this makes Hupy an "undersigned." Reading the release as a whole, it is clear that Hupy is not an "undersigned."

¶ 36. The preliminary recitals in the release identify the "undersigned" as the party that sustained damages. The release states that "the undersigned [is releasing claims] . . . for damages which the undersigned sustained as a result of" a specified accident. Obviously, Hupy did not sustain damages in the specified accident and, therefore, the term "undersigned" is not a reference to Hupy.

¶ 37. Moreover, only McGuire signed under the statement: "I FULLY UNDERSTAND, AND AGREE TO THIS RELEASE OF LIABILITY IN ITS ENTIRETY AND SIGN AS MY OWN FREE ACT." In contrast, the Hupy attorney signed under the statement: "I acknowledge that this settlement and Release have been entered into upon the advice and recommendation of myself as attorney for [McGuire]." Although not necessary to our conclusion, these clauses and the related signatures support our conclusion that only McGuire signed as the "undersigned" who was releasing various parties, including General Casualty. The Hupy attorney's signature relates to language, apparently required by statute as we discuss below, that acknowledged the settlement and the attorney's role in recommending that McGuire sign the release.

¶ 38. We further note that, with respect to the handling of the settlement payment, nothing in the release purports to bind Hupy *in any manner.* For example, nowhere in the release does Hupy agree to how it will disburse funds that Hupy might receive from General Casualty or any other source.

¶ 39. General Casualty directs our attention to *Riegleman v. Krieg,* 2004 WI App 85, 271 Wis. 2d 798, 679 N.W.2d 857. However, if anything, *Riegleman* supports Hupy's position. In *Riegleman,* we held that an attorney was contractually liable for medical expenses when the attorney signed a document expressly agreeing to "honor the [patient/client's lien] to protect adequately said above named [health care provider]." *See id.,* ¶¶ 1–2, 25–27. Thus, unlike here, the attorney in *Riegleman* expressly took on a contractual obligation.

¶ 40. In sum, nothing in the release indicates that Hupy agreed to indemnify General Casualty or to otherwise be responsible for facilitating payment to the Medical Center.

¶ 41. In support of its contract interpretation argument, General Casualty cites Wis. Stat. § 757.38. According to General Casualty, this statute compels the conclusion that the Hupy attorney did more than merely witness the release. We agree that the attorney did more than witness the release, but we fail to see how this statutory language supports General Casualty's argument that Hupy contractually agreed to indemnify any party.

¶ 42. Hupy acknowledges that it signed the release pursuant to Wis. Stat. § 757.38. That statute provides:

> *No settlement* or adjustment *of any action* which shall have been commenced to recover damages for any

personal injury or for the death as a result of any personal injury *in which an attorney shall have appeared for* the person or persons having or claiming a right of action for such injury or death *shall be valid, unless consented to in writing by such attorney* or by an order of the court in which said action is brought approving of such settlement or adjustment.

(Emphasis added.) General Casualty points to the language we italicize above: "No settlement . . . of any action . . . in which an attorney shall have appeared for [a plaintiff] . . . shall be valid, unless consented to in writing by such attorney." General Casualty, however, does not present an argument supporting the proposition that the term "consented" means something more than acknowledging an awareness or approval of the release. Absent such an argument, we do not discuss General Casualty's reliance on § 757.38 any further.

¶ 43. Finally, we reject General Casualty's argument that the mediation agreement and the settlement check support its view that Hupy is liable. The mediation agreement indicates that "[McGuire] shall be responsible for all subrogation claims and unpaid medical expenses and shall indemnify [General Casualty and others] against such claims, contingent upon reaching an acceptable agreement with . . . the health care providers." Assuming without deciding that the mediation agreement is part of the settlement, General Casualty does not point to anything in the agreement indicating that Hupy is potentially responsible for paying the Medical Center's lien amount. As to the settlement check, the fact that it was made payable to Hupy's trust account—whether considered alone or with the other documents—does not support General Casualty's contention that Hupy agreed to pay the Medical Center. Based on the settlement documents, the only pertinent

214

observation to make about the check is that Hupy's trust account was a temporary repository for General Casualty's payment to McGuire.

## 2. *Negligence/Assumed Duty And Equitable Estoppel*

¶ 44. We turn to General Casualty's argument that Hupy must indemnify General Casualty based on claims of negligence/assumed duty or equitable estoppel. The parties' arguments on these topics overlap significantly and boil down to a dispute about whether Hupy or General Casualty acted unreasonably under the circumstances. We make two initial observations that immediately call into question the viability of these two claims.

¶ 45. First, it appears that General Casualty bases these claims in large part on its view that the settlement documents show that the parties "intended" that Hupy was bound to pay the Medical Center from the settlement funds. However, we have already explained that nothing in the release purports to bind Hupy in any manner regarding the funds. General Casualty makes various supporting "intent" arguments, but we view these arguments as an attempt to circumvent the settlement documents. As we have explained, those documents plainly indicate that Hupy did not agree to be responsible for paying the Medical Center.

██

¶ 46. Second, General Casualty supplies no authority for the proposition that an adverse party may state claims for negligence or equitable estoppel against an attorney when the attorney's conduct at issue appears to involve nothing more than acts to carry out representation of a client. " '[T]he well established rule of law in Wisconsin is that absent fraud or certain

public policy considerations, an attorney is not liable to third parties for acts committed in the exercise of [the attorney's] duties as an attorney.' " *Yorgan*, 290 Wis. 2d 671, ¶ 27 (quoted source and other supporting citations omitted). We question whether, under *Yorgan*, General Casualty may state claims for negligence or equitable estoppel against Hupy. Regardless, assuming without deciding that *Yorgan* is not a bar to those claims, we do not see how General Casualty's claims could succeed based on the undisputed facts before us.

██

¶ 47. As to General Casualty's negligence/assumed duty claim, we fail to see how Hupy assumed a duty to pay the Medical Center when nothing in the settlement documents indicates that Hupy was responsible for paying the Medical Center. That Hupy was aware of the Medical Center's outstanding bill and distributed settlement funds to some third parties does not show that Hupy undertook a duty to pay the Medical Center.[7]

---

[7] Hupy relies on a Rule of Professional Conduct, SCR 20:1.15(d), and an ethics opinion interpreting that rule. *See* State Bar of Wisconsin Professional Ethics Committee Opinion #E-09–01, *Lawyer's responsibilities when a client gives a third party a "lien" on settlement proceeds*, 82 WIS. LAW. No. 3 (March 2009). Hupy argues that it acted consistent with its ethical duty. General Casualty does not argue that Hupy violated the Rule. The Rule provides:

> Upon receiving funds or other property in which a client has an interest, or in which the lawyer has received notice that a 3rd party has an interest identified by a lien, court order, judgment, or contract, the lawyer shall promptly notify the client or 3rd party in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, the lawyer shall promptly deliver to the client or 3rd party any funds or other property that the client or 3rd party is entitled to receive.

¶ 48. Turning to General Casualty's equitable estoppel claim, the elements of equitable estoppel are:

> (1) action or non-action; (2) on the part of one against whom estoppel is asserted; (3) which induces reasonable reliance thereon by the other, either in action or non-action; (4) which is to the relying party's detriment.

*Affordable Erecting, Inc. v. Neosho Trompler, Inc.*, 2006 WI 67, ¶ 33, 291 Wis. 2d 259, 715 N.W.2d 620.

¶ 49. The crux of General Casualty's equitable estoppel claim as we understand it is that Hupy's actions induced General Casualty to reasonably rely on Hupy to pay the Medical Center from the settlement proceeds. There is a disconnect, however, in General Casualty's argument because the Hupy "actions" on which General Casualty relies are Hupy's payments to other third parties from the settlement proceeds. By the time of those Hupy actions, General Casualty had already entered into the settlement and paid the $30,000. It makes no sense to say that General Casualty entered into the settlement and paid the money relying on Hupy's later actions.

### Conclusion

¶ 50. In sum, for the reasons stated, we affirm the judgment against General Casualty in appeal No.

SCR 20:1.15(d)(1). We need not and do not rely on the Rule. We observe that "the Rules of Professional Conduct for Attorneys are not determinative of an attorney's civil liability." *See Yorgan v. Durkin*, 2006 WI 60, ¶ 25 n.8, 290 Wis. 2d 671, 715 N.W.2d 160.

2013AP2511, but reverse the judgment and order against Hupy in appeal No. 2013AP2324.

*By the Court.*—Judgment and order reversed; judgment affirmed.