BAYLAND BUILDINGS, INC.,
Plaintiff-Appellant,

v.

SPIRIT MASTER FUNDING VIII, LLC,
Defendant-Respondent,

CITIBANK, NA, Defendant.

Court of Appeals

*No. 2016AP1807. Submitted on briefs April 12, 2017.
—Decided June 7, 2017.*

2017 WI App 42

150

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Alex R. Ackerman* of *Gerbers Law, S.C.*, Green Bay.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Timothy H. Posnanski* of *Husch Blackwell LLP*, Milwaukee.

Before Reilly, P.J., Gundrum and Hagedorn, JJ.

¶ 1. REILLY, P.J. This appeal addresses "constructive notice" under Wisconsin's construction lien law. Bayland Buildings, Inc. (Bayland) appeals the circuit court's conclusion that Bayland had constructive notice that Siren Saukville, LLC (Siren) sold its entire interest in the property to Spirit Master Funding VIII, LLC (Spirit Master) after construction began. Given the remedial nature of Wisconsin's construction lien law, we conclude as a matter of law that Siren's notice to Bayland that it was bringing in an "investor" did not constitute constructive notice that Siren no longer had any ownership interest in the property. We reverse the circuit court's grant of summary judgment and remand for further proceedings consistent with this decision.

*Wisconsin's Construction Lien Law*

¶ 2. Wisconsin's lien laws "are remedial in character and are to be liberally construed to give effect to the legislative intent of protecting the claims of tradesmen, laborers and materialmen for work and materials supplied." *Wes Podany Constr. Co. v. Nowicki*, 120

Wis. 2d 319, 324, 354 N.W.2d 755 (Ct. App. 1984). Wisconsin's lien law provides that "[a]ny person who performs, furnishes, or procures any work, labor, service, materials, plans, or specifications, used or consumed for the improvement of land" may file a lien against the real estate if he or she does not receive payment. WIS. STAT. § 779.01(3) (2015–16).[1] Construction liens are statutory creatures, and if a lien is properly perfected, it becomes an encumbrance against the real estate in the same manner as a mortgage or a judgment lien.[2] *See Goebel v. National Exchangors, Inc.*, 88 Wis. 2d 596, 606, 277 N.W.2d 755 (1979); *see also Wes Podany*, 120 Wis. 2d at 324; STEVEN W. MARTIN & BRIDGET M. HUBING, WISCONSIN CONSTRUCTION LIEN LAW HANDBOOK § 1.29 (4th ed. 2014).

¶ 3. In order to comply with the statutory requirements under WIS. STAT. ch. 779, a lien claimant must give written notice to the owner of the property prior to filing a lien claim. WIS. STAT. § 779.06(1), (2). "Owner" is defined in the statute as "the owner of *any* interest in land who, personally or through an agent, *enters into a contract,* express or implied, for the improvement of the land." WIS. STAT. § 779.01(2)(c) (emphasis added). A lien claimant is under no continuing duty to review the records of the property to confirm the ownership status as "the critical date, insofar as the lien claimant's duty to check the records

---

[1] All references to the Wisconsin Statutes are to the 2015–16 version unless otherwise noted.

[2] The procedures for perfection of the construction lien vary depending on the type of lien claimant and the nature of the project. *See* WIS. STAT. ch. 779; STEVEN W. MARTIN & BRIDGET M. HUBING, WISCONSIN CONSTRUCTION LIEN LAW HANDBOOK § 1.29 (4th ed. 2014).

in the office of the register of deeds is concerned, is the first date on which he furnishes labor or materials because the right to a lien of a supplier of labor or materials arises on that date." *Duitman v. Liebelt*, 17 Wis. 2d 543, 548–49, 117 N.W.2d 672 (1962). "[A] contractor does not lose his lien rights if, after he commences work, the owner with whom he contracted conveys the property to another, provided the contractor has no actual or constructive notice of the conveyance, and further provided that he complies" with the notice provisions of § 779.06(2). *Wes Podany*, 120 Wis. 2d at 326.

¶ 4. While Spirit Master acknowledges that Bayland was not given actual notice that Siren no longer had any ownership interest in the property, it argues that constructive notice imputes such knowledge upon Bayland. Bayland counters that while it knew that Spirit Master was coming into the project as an "investor," it did not know that Siren was no longer an owner.

## Standard of Review

▇▇▇▇▇

¶ 5. The standard of review for determining whether a contractor received constructive notice under Wisconsin's lien law is one of first impression. "Constructive notice" is a policy determination which "under certain circumstances" treats a person or entity as if it had actual notice. *Thompson v. Dairyland Mut. Ins. Co.*, 30 Wis. 2d 187, 192, 140 N.W.2d 200 (1966). Constructive notice exists when a person without knowledge of a fact is subjected on grounds of public policy to knowledge of that fact, as well as the liabilities associated with that knowledge. *Bump v. Dahl*, 26

Wis. 2d 607, 613, 133 N.W.2d 295 (1965). The law assumes that if the person had exercised a reasonable degree of care he would have acquired the knowledge.[3] *Id.*; 58 AM. JUR. 2D *Notice* § 6 (2012) ("A person is chargeable with constructive notice of any fact that would have been disclosed by a reasonably diligent inquiry if circumstances are such as to indicate to a person of reasonable prudence and caution the necessity of making inquiry to ascertain the true facts, and he or she avoids such inquiry.").

¶ 6. Our supreme court has found that the standard of review for constructive notice of an "unsafe condition" under the safe-place law is a question of law if the facts are not in dispute. *Megal v. Green Bay Area Visitor & Convention Bureau, Inc.*, 2004 WI 98, ¶ 20 n.2, 274 Wis. 2d 162, 682 N.W.2d 857. In *Megal*, our supreme court agreed with this court's conclusion that constructive notice is a question of law:

> The distinction between propositions of fact and conclusions of law is this: Propositions of fact are descriptive; conclusions of law are dispositive. Propositions of fact state history; conclusions of law assign legal significance to that history. When there is but one account of what happened [however the account is determined], and the application of acceptable rules of

---

[3] In Wisconsin, the common law specifically describes two instances where constructive notice will be found. First, the "recording of a deed of conveyance is . . . constructive notice to . . . subsequent purchasers or incumbrancers." *Duitman v. Liebelt*, 17 Wis. 2d 543, 548, 117 N.W.2d 672 (1962). Second, "possession of land is constructive notice and is sufficient to put the purchaser on his guard of whatever rights the possessor may have in the land if such possession is visible, open, clear, full, notorious, unequivocal, unambiguous, inconsistent with, or adverse to the title or interest of the vendor." *Bump v. Dahl*, 26 Wis. 2d 607, 612, 133 N.W.2d 295 (1965).

155

> law to that account is problematical, a question of law results. A conclusion of law results when legal effects are assigned to events. A conclusion of law stands for more than the happening of events; it is at least a step in the legal disposal of events. If a rule of law is applied before a conclusion is reached, that conclusion is one of law.

*Megal v. Green Bay Area Visitor & Convention Bureau, Inc.*, 2003 WI App 230, ¶¶ 12, 14, 267 Wis. 2d 800, 672 N.W.2d 105, *overruled on other grounds by Megal*, 274 Wis. 2d 162, ¶ 20 n.2 (alteration in original; citations omitted).

■
¶ 7. Like the safe-place statute, we conclude that constructive notice under Wisconsin's construction lien law calls for the assigning of legal effects to established facts. "Constructive notice is a legal inference from established facts and, like other legal presumptions, does not admit of dispute." 58 Am. Jur. 2d *Notice* §§ 6, 7 (2012). Accordingly, whether a party had constructive notice in a construction lien law setting is a question of law which we review de novo.

## Background

¶ 8. In August 2013, Bayland, as general contractor, and Siren, as owner, entered into an agreement for the design and construction of a building in Saukville, Wisconsin, at a cost exceeding $3 million. On September 30, 2014, Siren conveyed the property to Spirit Master Funding IX, LLC.[4] In the days prior to the sale, e-mails were exchanged between Bayland and Siren. Spirit Master claims these e-mails, as well as a

---

[4] On December 31, 2014, Spirit Master Funding IX, LLC conveyed the property to Spirit Master.

modified warranty, provided Bayland with constructive notice that Siren no longer was an "owner" under WIS. STAT. § 779.01(2)(c). The "established facts" for our purposes are the e-mail exchanges and the modified warranty. In the first e-mail, Siren states,

> Thank you, [Bayland]. Even with that assurance, *the investor* that we are closing on this, this morning with, needs [Varco-Pruden Buildings] to acknowledge that the warranty is in place and can be transferred, as outlined in the letter I emailed. It is the only thing holding up the closing. We have no paperwork that shows that Bayland is authorized to execute [Varco-Pruden Building's] warranty on [Varco-Pruden Building's] behalf.

Later that same day Siren contacted Bayland again with concerns about the warranty:

> [Bayland], we are running into a deadline with the title company (we only have another hour and 15 minutes to close). And, worse, if we miss it, and cannot close today, that will put us into the next quarter and *the investor* will back out, because this was *earmarked as an investment for this quarter*, only. I don't think that either of us want that to happen, since I can't imagine the possible repercussions from Bayland not having a required building *Warranty in place for us*, and, therefore, blocking the transaction. That's not a threat, that's a genuine concern.

(Emphasis added.)

¶ 9. The modified warranty provided:

> We refer to AIA Document A141–2004 (Standard Form of Agreement between Owner and Design-Builder), between Bayland Buildings, Inc' as Design-Builder and Siren Saukville, LLC ("Siren"), as Owner (the "Agreement"). The Agreement pertains to the project

157

known as Camping World and located at 800 E. Green Bay Road, Saukville, Wisconsin (the "Project"). The Agreement contains warranties in favor of Owner, including but not limited to those referenced in Section A.3.5.1 (the "GC Warranty"), CWI. Inc. and Camping World RV Sales, LLC (jointly and severally, "Tenant") is the user of the Project.

> Design-Builder consents to the assignment of the GC Warranty from Siren to Spirit Master Funding IX, LLC ("Spirit") and its successors and/or assigns and *agrees that the GC Warranty shall also extend to Siren* and Tenant and their respective successors and/or assigns.

(Emphasis added.) The e-mails clearly reference Spirit Master as an "investor" making an "investment" in the project and express that the building warranty be modified so it is in place for "us." There is no inference in the e-mails or warranty that Siren would no longer have any ownership interest; rather, the e-mails reference that a new "investor" was coming into the project.

¶ 10. Upon completion of the project, Bayland claimed it was owed $485,051.24 for its work. Siren refused to pay, and Bayland filed a claim for lien against Siren and later commenced suit, seeking lien foreclosure and a money judgment. When Bayland learned that Siren had sold its entire interest in the property, it filed this action against Spirit Master, seeking foreclosure of its lien.

¶ 11. Spirit Master moved for summary judgment on the ground that Bayland had constructive notice of the change in ownership via the e-mails and also sought sanctions for Bayland's assertion of lien rights. The circuit court found that Bayland had constructive notice based on the e-mail exchanges and

modified warranty. The court denied Spirit Master's request for sanctions and dismissed all claims between the parties.

*Analysis*

¶ 12. We commence by noting a critical distinction. If Siren had any ownership interest after the September 30, 2014 transaction, then Bayland's lien would have been properly perfected as an "owner" is one who has "any interest" in the land upon which the lien attaches and who entered into a contract for the improvement of land, as Siren admittedly did. *See* Wis. Stat. § 779.01(2)(c). Our inquiry, therefore, is whether the established facts gave Bayland constructive notice that Siren no longer had any ownership in the property, i.e., would a person of reasonable prudence and caution have made a "reasonably diligent inquiry" into whether Siren no longer had "any" ownership interest in the property.

¶ 13. We conclude as a matter of law that the established facts—the e-mails and modified warranty —would not cause a contractor of reasonable prudence and caution to believe that Siren had sold its entire interest in the property. It is settled that Bayland had no duty to keep itself updated by searching the title records after construction began. *See Liebelt*, 17 Wis. 2d at 548–49. Thus, if constructive notice is to be imputed at all, it must rest on the e-mails and warranty. The e-mails indicate that an "investor" was being brought in, rather than Siren selling out. The modified warranty did not take Siren out of the picture as the warranty was to be "in place for *us*," and the modified warranty expressly included "Siren and Ten-

159

ant and their respective successors and/or assigns." The clear inference from the e-mails and modified warranty was that Spirit Master was going to invest in Siren's project and that Siren was going to remain in some ownership capacity. We construe construction lien laws liberally, and we accept that a lien claimant does not lose its lien rights where the property is sold without notice. *Wes Podany*, 120 Wis. 2d at 324, 326. Accordingly, we reverse the court's grant of summary judgment to Spirit Master and remand for further proceedings consistent with this decision.

¶ 14. As an alternative ground for summary judgment, Spirit Master argues that Bayland waived all lien rights by furnishing lien waivers for the work performed on the project. Spirit Master notes that beginning on October 23, 2013, Bayland issued lien waivers that relinquished all of Bayland's rights as the waiver was "[f]or all labor performed and for all material furnished for the erection, construction, alteration or repair of said building and appurtenances, except none." Bayland counters that all the lien waivers were partial lien waivers that specifically preserved its lien rights with respect to the disputed amounts at issue and that "no full and final lien waiver has been issued." The circuit court did not reach this issue.

¶ 15. To the extent Spirit Master argues that Bayland's lien waivers provide an alternative ground to grant summary judgment, we disagree as this is an issue of fact. The final "Partial Waiver of Construction Lien," issued on February 20, 2015, states in section four: "Partial waiver of lien rights is made for labor and material provided as per Change Order 24 (see attached) in the amount of $161,860.63." Change Order 24 includes a rider that specifically references and

acknowledges disputed amounts and represents the amounts owed "excluding disputed change orders" and describes actions to be taken "pending resolution of disputes." Change Order 3, dated January 21, 2014, was never signed by Siren and remained in dispute at the time the February 20, 2015 partial waiver was issued. Section four of the partial lien waiver indicates that further lien rights are being asserted pursuant to Change Order 24, at a minimum. Accordingly, there remains a material issue of fact and this issue is not ripe for summary judgment.

*By the Court.*—Order reversed and cause remanded.